W. H. HARDING v. STATE OF NEBRASKA.

FILED MARCH 17, 1932. No. 28151.

*Frank A. Anderson,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Homer L. Kyle, contra.*

Heard before ROSE, GOOD and EBERLY, JJ., and BROADY and CHASE, District Judges.

BROADY, District Judge.

This is a criminal prosecution against the defendant on the charge of breaking and entering, or burglary. From a verdict of guilty and a sentence of one year in the penitentiary the defendant appeals on two principal grounds: First, that the court erred in not sustaining defendant's objection to testimony of footprints which was received in evidence; and, second, that the evidence is insufficient to sustain a verdict. There are other assignments of error which this court does not deem it necessary to consider.

The village of Loomis, of small population, is located in Phelps county. Approximately a week prior to July 13, 1930, the defendant came to Loomis and procured odd jobs in the neighboring harvest fields, during which time he lived at what is called the "shack" on the edge of the town, and which was located two or three blocks from a blacksmith shop belonging to James Anderson. The defendant had had some experience as a mechanic and had a few mechanical tools in his shack. During the time he was at Loomis he visited at the blacksmith shop and on one or two occasions was hired to do small jobs for the smith. During this time the blacksmith had shown the defendant his acetylene gas welding machine and the

parts and attachments thereto which were kept in the desk or bench drawer. During the nighttime of July 13 a slight rain had fallen so that foot tracks were visible the next morning. The next morning, July 14, when Anderson went to his shop he found the side window and the back door open and his welding machine gone. He called the sheriff and together they investigated the premises and found footprints made by a large shoe leading from the graveled highway across lots leading to the open window in the shop. The attachments and parts of the welding machine were all missing, and the footprints led from the rear door of the shop across the potato patch and vacant lots to the same point in the highway from whence the tracks coming in an opposite direction started, and on the highway were distinct marks of automobile tires. The blacksmith looked at the footprints, but left it to the sheriff to take the measurements, which the sheriff did by stepping with his own foot in the tracks, but he took no measuremnts. The sheriff said that the footprints were of a large foot, an inch longer and inch wider than his own shoes; and at the trial the defendant, who did not take the witness-stand, was referred to by the prosecution and the sheriff's attention called to his feet. The prosecution then asked the sheriff, in substance, how the size of the footprints compared with the size of the feet of defendant, who was then sitting in the courtroom. The sheriff replied that they were the same size.

The burglary complained of occurred on the night of July 13, 1930. On the afternoon preceding the burglary the defendant called upon the blacksmith and told him he was going to Kansas where he had work operating a threshing machine outfit and bade the blacksmith good-bye. He also paid the owner of the shack one dollar for rent and told him he was going to Kansas for a like purpose. The defendant was not again seen in the town or about the community until the following April when he was located in South Dakota, arrested and returned to

Phelps county. Inquiry at the place in Kansas where defendant said he was going disclosed that he was unknown.

One of the merchants in this town said that he saw the same footprints and made measurements of the tracks near the window and through the potato patch, taking measurements with a stick and also by himself stepping in the tracks, and that he also saw and took measurements of tracks near the gate or fence of the premises where defendant had lived. All of the tracks corresponded in size. There is no evidence whatever of any distinct mark in the footprints showing other than the ordinary shoe, except that they were larger than common. There is no other inference that the footprints were made by the defendant or that they were not made by some other person. The comparison of the size of the tracks with the defendant's feet as shown in the courtroom at the trial, approximately a year after the burglary, was wholly incompetent. At the trial, defendant's counsel called a witness, the chief of police of the town of Holdrege, merely identified him, and asked what size shoes he wore, to which the police officer replied, "Number 12." The witness was then excused. Reference was also made to other persons with large feet. The defendant's objection to this testimony should have been sustained.

When the defendant was arrested in Dakota, in April, he had in his possession a welding machine of the same make and pattern as that which disappeared from the blacksmith shop. While the tank did not appear in evidence, the attachments, consisting of ten or fifteen different parts, were produced. These consisted of two heads on each of which was fastened a gauge, several valves and brass connections, also two separate lengths of cloth-covered hose with brass couplings, and two or three brass, or copper, nozzles and tubes and a pair of goggles. In all probably ten or more such parts. The machine is known as a standard Smith welding outfit, model No. 62. The parts are all interchangeable and may be fastened and used on any other machine of a like model. The

owner of the blacksmith shop, Anderson, went with the sheriff to Dakota when the defendant was arrested and saw the attachments there. They were brought back to this state and at the prosecution Anderson was unable to identify any of these parts, except one of the tips was bent in a certain way that he recognized and identified, saying that he had dropped this tip at one time and that caused this bend. This tip, so-called, consisted of a brass or copper tube probably three-eighths of an inch in diameter, probably eight inches long, with a triangle at one end probably four inches long. He was shown each part separately, including the goggles, but could not identify any of them except the tip referred to. The manufacturer's serial number had been defaced, and when Anderson was asked how he could identify the parts, said, "Well, the serial number was gone. Q. That would be the only way you could identify it, would be by the serial number? A. Yes, sir; that is the only way." The prosecution went over with Anderson in great detail each of the parts. Anderson could identify none other than the tip referred to. Then Anderson was asked, "Q. Then is there any way by which you can identify the gauge which I have just handed to you as ever having been your property? A. Well, it all disappeared at the same time."

The court sustained an objection to further questions as follows: "No; he (Anderson) said that he couldn't say that was the piece or was his. There might be a thousand pieces of that kind, and he said he could not identify it as being from his shop." Then followed an argument between the county attorney and the judge, and the court said further: "There are thousands of that kind, and he said he could not identify it as being in his shop. He had one like it, but that is all that he can say."

From the foregoing it is beyond dispute that the evidence adduced at the trial was not sufficient to sustain the verdict. The testimony of the footprints was, under this record, incompetent and insufficient; and the trial court properly says there might be a thousand different

parts such as the prosecuting witness was trying to identify. Therefore, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.