JOHN ERNEST PALMER *v.* STATE OF
MARYLAND

[No. 458, September Term, 1969.]

*Decided August 12, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Dean A. Shure* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, State's Attorney for Montgomery County,* and *William A. Cane, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, John Ernest Palmer, was convicted in the Circuit Court for Montgomery County by a jury, Judge John P. Moore presiding, of storehousebreaking with intent to commit a felony, namely, steal goods and chattels over the value of one hundred dollars (first count) and grand larceny (third count). He was sentenced to three years on the first count and three years on the third count; the sentences to run consecutively for a total of six years.

The testimony reveals that on February 16, 1968, at approximately 7:30 a.m., Corporal Paul Smith of the Montgomery County Police responded to a reported breaking and entering at Victory Van Leasing Co., 926 Derwood Circle, Rockville, Maryland. He was met by the manager, Mr. Tolson, found that entry had been gained by breaking the glass in a rear door, and further found that the office had been ransacked. Corporal Smith testified that at 2:40 a.m. on the morning of February 16th he had been patrolling in the area and had noticed a burglar alarm ringing at Loeb Hardware, next door to Victory Van. Corporal Smith checked the rear of Victory Van warehouse, noticed a broken window but was unable

to make a closer examination of the window due to the height of the fence separating Loeb and Victory Van. From this information Smith concluded that the breaking at Victory Van had occurred at approximately 2:40 on the morning of February 16th.

Donald Tolson, the manager of the Victory Van warehouse, testified that upon his arrival at work on February 16th, the office was in a state of disarray with the contents of desk drawers and file cabinets piled in heaps on the floor. He testified that $108.44 was missing from the petty cash box. Tolson further testified that appellant, John Palmer, had been employed by Victory Van from July 29, 1966 to February 1, 1968 and that Palmer did not have permission to enter the warehouse at any time subsequent to February 1, 1968.

Detective Sergeant O. W. Sweat testified that on the morning of February 16, 1968 he made an investigation of the Victory Van warehouse and gathered several pieces of paper from the floor which appeared to bear the impression of a foot. These footprints were subsequently sent to the Federal Bureau of Investigation. Detective Sweat testified that on February 17, 1968 he obtained a search warrant for the appellant's apartment. The search warrant was introduced into evidence over defense objection. Detective Sweat further testified that a search of the appellant's apartment produced a pair of Wellington type boots which were introduced into evidence as State's exhibit #4. The boots were subsequently transferred to the Federal Bureau of Investigation.

Officer Michael Keller testified that at approximately 2:40 a.m. on the morning of February 16, 1968 he observed the appellant at the scene of an automobile accident near the Colonial Motel in Rockville, approximately two miles from the Victory Van warehouse. At the time the appellant was wearing boots similar to those introduced into evidence as State's exhibit #4.

Thomas Delaney of the Federal Bureau of Investigation testified that the print made by the boots (State's exhibit #4) matched the footprint on a piece of paper

found on the floor of the Victory Van warehouse. Mr. Tolson was recalled and testified that the paper upon which the footprint was found was a payroll journal sheet for the period ending February 14, 1968. The sheets were kept in a folder in a file drawer prior to their permanent recordation which normally occurred within forty-eight hours of the close of the pay period. A defense motion for judgment of acquittal was made at the close of the State's case and denied.

On appeal appellant presents three questions, namely:

1) Was there sufficient evidence presented to convict the appellant of storehousebreaking?
2) Did the State prove the requisite felonious intent?
3) Did the State fail to establish that the value of the goods was in excess of $100.00?

## I

Appellant does not challenge the State's proof of the *corpus delicti* of the crime of storehousebreaking. Appellant challenges as insufficient the quantum of proof of his criminal agency. At trial the primary evidence connecting appellant to the crime was a footprint, identified as having been made by a boot owned by him, impressed upon a payroll journal sheet. The journal sheet was found on the floor of the ransacked office. We think that the same standards of proof must be associated with footprints as those established for fingerprints. In *Lawless v. State*, 3 Md. App. 652, 659, we stated:

"A latent fingerprint found at the scene of the crime, shown to be that of an accused, tends to show that he was at the scene of the crime. The attendant circumstances with respect to the print may show that he was at the scene of the crime at the time it was committed. If they do so show, it is a rational inference, consistent with the rule of law both as to fingerprints and

circumstantial evidence,[3] that the accused was the criminal agent. While a defendant does not have the obligation to testify himself or to offer testimony to explain the presence of his prints, a court cannot supply evidence that is lacking. *United States v. Hayes,* 385 F. 2d 375 (4th Cir. 1967). We also feel that the rule in *McNeil v. State,* 227 Md. 298, does not compel the state to negative every conceivable possibility that an accused, shown to be at the scene of a crime by his fingerprint, was present other than at the time of the commission of the crime. The fingerprint evidence, as we construe it, need be coupled only 'with evidence of other circumstances *tending* to *reasonably* exclude the hypothesis that the print was impressed at a time other than that of the crime' (emphasis added). The rule does not require under all circumstances in every case that the State affirmatively and conclusively prove that the accused could *not* have been there other than a time when the crime was committed".

The payroll journal sheet upon which the footprint was found was not completed at the earliest until the close of the work day on February 14, 1968, some thirty-two hours prior to the crime. The appellant has been an employee of the company but had not been employed since February 1, 1968, at the close of business on February 15, 1968. The office was in normal order and the payroll journal was kept in a folder in a file drawer. We find that the evidence adduced at trial was legally sufficient for the trier of fact to find that the footprint was impressed at the time of the crime.

---

3. "And when guilt is based solely upon circumstantial evidence, the circumstances, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence". *Vincent v. State,* 220 Md. 232; See *Corens v. State,* 185 Md. 561, 572.

## II—III

Appellant's second contention is that the State failed to prove that he had the intent to steal goods and chattels over the value of one hundred dollars. His third contention is that the proof of the value of the goods was insufficient to convict him of grand larceny. The most conclusive method of proving the element of intent in a case involving the intent to steal goods of the value of one hundred dollars or more is to establish the value of the goods actually taken. *Johnson v. State,* 5 Md. App. 540. The unchallenged testimony of Mr. Tolson was that the cash box contained $108.44, an amount in excess of one hundred dollars, and thus the intent to steal goods of the value of one hundred dollars or more was sufficiently proven. Mr. Tolson's testimony that the money taken totalled $108.44 was also sufficient to support appellant's conviction of grand larceny.

*Judgments affirmed.*