THE STATE OF OHIO, APPELLEE, *v.* HAIRSTON, APPELLANT.

[Cite as State v. Hairston (1977), 60 Ohio App. 2d 220.]

(No. 1-77-44—Decided November 9, 1977.)

*Mr. David E. Bowers,* prosecuting attorney, and *Mr. Stephen R. Shaw,* for appellee.

*Mr. Timothy C. Hamman,* for appellant.

COLE, J. This is an appeal from a judgment of conviction and sentence in the Common Pleas Court of Allen County for the crime of trespass in an unoccupied structure with the purpose of committing a theft offense therein in violation of R. C. 2911.13 (A). The offense involved an attempted or incomplete burglary of Fruit Distributors located at 129 South Central in the city of Lima. The facts generally indicate that the structure was protected by a silent alarm system which gave direct alarm to the police. At about 10:35 p.m. on February 16, 1977, the alarm was given. Investigation by the police revealed that a T. V. tower was lying against the wall of the building in such a manner that it could be used as a ladder for access to the roof. Further investigation revealed a large hole in a plywood structure on the roof with a pick lying adjacent thereto. A search of the building lasting about an hour disclosed that the alarm system had been ripped from the wall, and in one office some photographic equipment and two calculators had been stacked on a desk, cupboards were open as well as some desk drawers. No one was found in the building. However, the building was adjacent to and joined on

the roof level with a building occupied by Midas Muffler. The search was extended to this area at about 12 midnight. At this time two witnesses saw a man identified as the defendant apparently leaving the front door. He was limping badly and in apparent pain. He ran to a nearby bar where he was subsequently apprehended. There were, at several significant areas, footprints witnesses identified as made by "tennis shoes." The defendant was wearing tennis shoes and his clothing, on examination by experts, revealed particles of plywood.

At the trial the defendant objected to testimony as to the footprints primarily on the ground that the witnesses were not qualified as experts. At the close of the state's case defendant moved for acquittal and the motion was overruled. He then introduced, as the defense's case, certain photographs and rested. The motion was not renewed. The court charged the jury and omitted the word "therein," referring to the unoccupied structure in the definition of the offense. This was brought to his attention by counsel for appellant and the jury was brought back and the correction made. No objection was then made by appellant as to this corrected charge.

The defendant was convicted and now appeals asserting three assignments of error which will be separately considered, together with such additional facts as may be pertinent to their disposition.

I. "The trial court committed prejudicial error by permitting witnesses without qualification or foundation to testify that footprints were 'tennis shoe' prints and/or that they were similar to defendant's footprints."

One of the primary issues herein involved is the question of identity. The evidence was quite sufficient to establish that there had been a trespass to an unoccupied structure. The presence of a large hole in the roof; the use of the T.V. tower as a ladder; the testimony of the manager of the business that the structure had been locked up and left in normal condition; that there had been no such hole several days before; the very cold weather which would have revealed its existence; the rifling of desks; destruction of the alarm system and the accumulation of loot all go to a conclusion beyond reasonable doubt that someone had entered the premises without authorization and with the intent to commit a theft offense.

The problem remaining is whether or not the defendant was that person so trespassing, and one item of evidence connecting him to the crime was the fact that marks of "tennis shoes" were found in critical areas on the roof and in the building, and the fact he was apprehended wearing tennis shoes. To the characterization or description of the shoe marks as those made by "tennis shoes" the defendant objects because (1) the witnesses were not experts, and (2) this constitutes opinion evidence without any description of the facts upon which the opinion is based.

As to the necessity for expert testimony, it would appear that testimony on footprints can be given by lay witnesses. In annotation 35 ALR 2d 856, there appears a discussion of this general issue. It is stated at page 861: "In presenting footprint evidence, it appears that a witness is often allowed to express his opinion as to the similarity of prints, if he shows that his conclusions are based on measurements or peculiarities in the prints, although in some cases it is held that he must restrict his testimony merely to a statement of the facts. Because of the obvious means of comparing footprints a lay witness is often allowed to testify in this regard and express his opinion as to similarity."

In the present case the testimony of most witnesses is limited to identifying the prints as those of "tennis shoes." However, one witness went on to express a direct opinion as to similarity:

"Q. Officer, you indicated you saw tennis shoe prints; could you describe those—would you know what type if you would see them again?

"A. Yes, sir. I would.

"Q. Did you have occasion to see that same design, pattern that evening?

"A. I did.

"Q. Where was that?

"A. On the foot of Mr. Hairston.

"Q. How do you know it is the same design?

"A. I looked at them, and in my opinion it is the same as the ones that was on the chair."

This witness is, therefore, expressing an opinion as to the similarity of footprints. The other witnesses are in effect simply expressing an opinion that the footprints were made

by tennis shoes without any opinion as to similarity to other prints. The fact that the defendant was wearing tennis shoes, established by other testimony, makes it possible for the inference to be drawn that he made the prints.

As to the latter type of testimony, it may be said that tennis shoes are generally rubber soled with a characteristic sole pattern. This pattern is sufficiently large to be readily recognizable and well within the capabilities of a lay witness to observe. No detailed measurements, no subtle analysis or scientific determination is needed. The pattern is simply identified as being similar to that customarily made by tennis shoes. This type of testimony is well within the scope of opinion testimony permitted to lay witnesses. It is more in the nature of description by example than the expression of a conclusion. In 21 Ohio Jurisprudence 2d 409, Evidence, Section 402, it is said:

"Another well-established exception to the opinion evidence rule is that in matters more within the common observation and experience of men, non-experts may, in cases where it is not practicable to place before the jury all the primary facts upon which they are founded, state their opinions formed from such facts, where such opinions involve conclusions material to the subject of inquiry.

"If the fact to be established must 'be derived from a series of instances passing under the observation' of witnesses, 'which yet they never could detail to the jury,' opinion evidence will be received. To state the matter another way, nonexperts may state their opinions in all cases where their conclusions are based upon a number of indescribable facts.***"

To detail the pattern characteristics observed which give rise to the conclusion that they were made by tennis shoes would be difficult if not impossible. The description of the prints as made by "tennis shoes" sums up those many characteristics into one comprehensible observation well within lay capabilities and might be more properly denoted the statement of a composite fact. 31 American Jurisprudence 2d 499, Expert and Opinion Evidence, Section 6, states:

"The general rule excluding opinions of witnesses is simple in statement, but not simple in application, for it is not

always easy to distinguish in the testimony of a witness facts within his knowledge of observation from his opinions on facts. As a general rule, a witness may testify directly to a composite fact, although in a sense his testimony may include his conclusion from other facts. In the affairs of everyday life, it is extremely difficult to distinguish between 'opinion' on the one hand and 'fact' or 'knowledge' on the other. Moreover, objections on the ground that the proposed testimony states a conclusion are sometimes pushed to captious extremes. The true solution would appear to be to leave such questions for the practical discretion of the trial court. Often the simplest and most satisfactory method is to permit a witness to state a fact as he knows it and leave the ground of his belief to be developed by cross-examination. In such cases it is within the administrative discretion of the court to require the witness' observations and particulars of examination to be more fully set forth or to allow his testimony to stand, leaving the parties to examine and cross-examine him with respect to the same."

The objections, if any, go to the weight to be given the testimony and not to its admissibility.

Similar considerations govern the case of the witness who testified directly that the design of the print was the same as the design or pattern of the shoe worn by the defendant. The trial court properly admitted the testimony, the objection going to weight and not admissibility. We are cited by neither appellant nor appellee to any Ohio cases bearing directly upon this point, but we conclude that the weight of authority and the logic of the situation both dictate the conclusions which we have set forth above.

The assignment of error is not well taken.

II. "The trial court committed prejudicial error by failing to correctly instruct the jury as to the elements of the offense of breaking and entering under Ohio Revised Code 2911.13."

In his general charge to the jury the trial court inadvertently omitted the word "therein" in describing the offense. This omission was called to the attention of the court and the court thereupon supplemented his instruction with the following:

"The Court: Now, it was called to my attention here—and I don't remember specifically—but in any event, in

the statute which says, 'No person by force, stealth, or deception shall trespass in an unoccupied structure with purpose to commit therein any theft offense.' In other words, the purpose to commit a theft offense must be the purpose to commit a theft offense therein, for instance Fruit Distributors."

There is no indication that any further objection was made by appellant, who now asserts that the giving of a correct instruction after an incorrect instruction has been given does not cure the error, and we are cited to *Toledo* v. *Starks* (1971), 25 Ohio App. 2d 162. However, in that case two differing instructions were given to the jury and the court failed to make any indication as to which was correct, thus leaving to the jury a wholly ambiguous situation. Here, in the present case, the court specifically recalled the jury to give the corrected instruction which consisted of adding one word which had been omitted during the general instruction. The supplemental instruction quite clearly makes the specific addition. There is thus no conflict between opposing instructions but an addition to an existing instruction.

The assignment of error is not well taken.

III. "The trial court committed prejudicial error in overruling defendant-appellant's motion for a directed verdict, and the verdict is against the manifest weight of the evidence."

The first part of this assignment of error is not well taken because by proceeding to put on his defense, appellant waived the motion made at the end of the state's case and it was not renewed.

In any event, the verdict is not against the manifest weight of the evidence but is supported by sufficient credible evidence of competent witnesses. The crucial issue is that of identity. To establish this we have not only the testimony as to the footprints but much in addition to lead to the conclusion the defendant was the person who entered the building and committed the crime charged. There was evidence that plywood had been broken open to effect entrance. Plywood chips were found in the defendant's clothes. He was first seen coming from the door of the adjoining Midas Muffler building which had a common roof with the Fruit Distributors building, access having been made into the latter from the roof area. He had a broken ankle and yet ran from that

building in apparent great pain. He appears to have been the only unidentified person in the area at a time of night when few would normally be in the area. These and other facts taken in their totality, with the mutually supporting inferences, are sufficient to support the verdict.

The assignment of error is not well taken.

*Judgment affirmed.*

MILLER, P. J., and GUERNSEY, J., concur.