523 A.2d 643

**William Henry HUTT**

v.

**STATE of Maryland.**

**No. 964, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

April 10, 1987.

Laurie I. Mikva, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curren, Jr., Atty. Gen., Baltimore, Richard D. Warren, State's Atty. for Wicomico County, Sampson G. Vincent, Asst.

State's Atty. for Wicomico County, on the brief), Salisbury, for appellee.

Submitted before WILNER, GARRITY and ROBERT M. BELL, JJ.

WILNER, Judge.

The Circuit Court for Wicomico County, sitting without a jury, convicted appellant of three counts of daytime housebreaking and three counts of theft. These convictions rested upon a finding that, in company with one Jerry Adkins, appellant had broken into the homes of Marie Allen and Madge Mills on the afternoon of January 12, 1986; that he had broken into the home of David Blades on the afternoon of January 13; and that he had stolen certain property from each of those homes. Appellant never contested that the homes had been burglarized or that property had been taken. His defense was that he did not commit those acts.

The evidence against appellant, who was tried jointly with Mr. Adkins, consisted primarily of (1) testimony that, on January 14, 1986, he was in possession of property taken from the Allen home two days earlier, which he offered to give or sell to one Linda Jarman, (2) a statement given by appellant to the police, admitting that he had participated with Adkins in the Allen break-in, and (3) testimony and exhibits concerning shoeprints found at the Allen, Mills, and Blades properties as well as at the home of Mr. Adkins's parents, where appellant and Adkins had been seen around noon on January 13 and whose garage was broken into at about the same time. Appellant contends in this appeal that:

"I. The court below erred in admitting shoeprint evidence against appellant.

II. The evidence is insufficient to sustain appellant's convictions for daytime housebreaking of the Blades and Mills residences.

III. The evidence was insufficient to sustain appellant's convictions for theft of property worth less than $300.00."

Finding no reversible error, we shall affirm.

### (1) *Shoeprint Evidence*

The shoeprint evidence was a bit confusing, but essentially it was as follows. Appellant was arrested on January 15, 1986. At the time, he was wearing workboots, which were eventually taken from him and offered into evidence. The boots had cleated soles. Adkins was arrested a day earlier—January 14. The police recovered from his residence a tennis shoe which also was placed into evidence. It had a herringbone print.

A number of police officers investigated the three housebreakings and the garage breaking at the home of Adkins's parents; most of them described two types of shoeprints they observed in the respective vicinities—one a herringbone print and one a workboot print with a cleat-type pattern around the outer edge. Photographs and a cast were made of the prints found at the Allen home; photographs were made of the prints found at the Adkins home; and a sketch was made of prints found at the Blades home. Over appellant's objection, the cast and the photographs were admitted into evidence; the sketch (State's Exhibit 19) is marked as an exhibit, but, although there was testimony concerning it, the transcript does not reflect its actual admission.

Corporal White, of the State Police, investigated the break-ins at all four locations (the three homes and the garage of Adkins' parents). Without objection, he testified that, "from a visual inspection," the workboot-type print that he observed at the Mills property was "identical to the one which I saw up there at the Allen residence" and that "[b]ased [o]n my visual inspection," the boot-type print he observed at the Adkins garage "appeared to be identical with those I found at the Allen residence ... and similar to the bootprint that was found at the Mills residence."

Trooper Ferguson investigated the Mills and Allen break-ins. Without objection, he testified that a herringbone footprint that he observed at the Allen residence "was the same kind of design I had seen at the [Mills] residence."

There was no evidence that the prints observed at any of these locations—either the herringbone or the cleated work-boot—were unique. Nor was there any expert testimony comparing any of the photographs or the cast to the boots appellant was wearing at the time of his arrest, and therein lies appellant's first complaint. The complaint is in two parts: he contends, first, that expert testimony is required in order to establish a comparison between prints found at the scene and his shoes, and, second, that, in any event, comparison evidence is not admissible unless there is something unique about the print—something to distinguish it from prints that could be made from other shoes of the same brand or type.

We start our consideration of this complaint with the general observation that "the correspondence of footprints found in connection with a crime with the print made by the shoe of the accused, is admissible in evidence to identify the accused as the guilty person." *Graham v. State*, 239 Md. 521, 529, 212 A.2d 287 (1965); *Palmer v. State*, 10 Md.App. 152, 268 A.2d 582 (1970).

■ As to the first prong of appellant's argument, the general rule seems to be that expert testimony is *not* necessary in order to establish this correspondence—that "lay opinion" will suffice. *See State v. Walker*, 319 N.W.2d 414 (Minn.1982); *State v. Jackson*, 302 N.C. 101, 273 S.E.2d 666 (1981); *D'Antignac v. State*, 238 Ga. 437, 233 S.E.2d 206 (1977); *Johnson v. State*, 177 Ind.App. 501, 380 N.E.2d 566 (1978); *State v. Drake*, 298 S.W.2d 374 (Mo.1957); *State v. Cullen*, 591 S.W.2d 49 (Mo.App.1979); *Irvin v. State*, 66 So.2d 288 (Fla.1953), *cert. denied* 346 U.S. 927, 74 S.Ct. 316, 98 L.Ed. 419 (1954); *White v. State*, 375 So.2d 622 (Fla.Dist.App.1979); *People v. Lomas*, 92 Ill.App.3d 957, 48 Ill.Dec. 377, 416 N.E.2d 408 (1981); *State v. Hairston*, 60

Ohio App.2d 220, 396 N.E.2d 773 (1977); *State v. Curry,*
103 Idaho 332, 647 P.2d 788 (Ct.App.1982); Annot., *Foot-
prints As Evidence,* 31 A.L.R. 204 (1924); Annot., *Foot-
prints As Evidence,* 35 A.L.R.2d 856, 881 *et seq.* (1954); 3
*Wharton's Criminal Evidence* § 610, at 181–82 (13th ed.
1973). We agree with that view. As the *Hairston* Court
indicated, shoeprint patterns are often "readily recognizable
and well within the capabilities of a lay witness to observe.
No detailed measurements, no subtle analysis or scientific
determination is needed." *State v. Hairston, supra,* 396
N.E.2d at 775. When, as here, there is both physical
evidence of the print, such as a photograph or cast, and the
shoe itself, the trier of fact is ordinarily as capable as any
witness of examining the evidence and noting any similari-
ties or dissimilarities.

The second prong—the requirement of uniqueness—is, to
some extent, subsumed in the first, but it has an indepen-
dent quality that has been addressed separately. It relates
to the nature and quality of the evidence itself rather than
to the expertise of the person making the comparison.
Where the evidence is offered to show criminal agency—
that the defendant was at the scene of the crime—will a
general comparison of the print with the defendant's shoe
suffice, or must the State show some uniqueness so as to
exclude the possibility that the print could have been made
by someone else wearing a similar kind of shoe?

That very possibility was present in *McDonnell v. United
States,* 455 F.2d 91 (8th Cir.1972), and it led the Court into
articulating a somewhat strict standard for admitting shoe-
print evidence. The defendant was accused of bank rob-
bery. The primary evidence linking him with the robbery
came from one Danny Ward, who claimed to be an accom-
plice and who clearly was in the bank at the time of the
robbery. Photographs of footprints found at the scene
were admitted into evidence, as were the shoes allegedly
worn by both Ward and McDonnell. Ward's shoes were
"almost identical to the shoes of McDonnell"; an FBI
report indicated that the prints shown in the photographs

"were the same design as the shoes taken from both Danny Ward and McDonnell" and that "it was not possible to definitely associate the shoe prints with [McDonnell's] shoes." *Id.* at 94. On that record, the appellate Court concluded:

> "It is competent to present to the jury the character of footprints and shoes only where it has been established that the footprints and shoes *are distinctive enough to afford reliable comparison....* Such comparison is essential to show a connection between the defendant and the prints, thereby providing the relevancy required for admission into evidence. Here, such proof was not offered, and in light of the additional distinct possibility of a similar shoe making the print, it was error to admit McDonnell's shoes and the photographs of the footprints into evidence."

*Id.* at 95 (citations omitted; emphasis added).

Appellant seizes upon the emphasized language in *McDonnell* and similar language in some other cases as support for the notion that some uniqueness in the print must be shown before this kind of evidence can be admitted to prove criminal agency. We think that he reads too much into that type of language, however. A careful reading of *McDonnell,* the cases the *McDonnell* Court cited for that statement, and other cases using similar language reveals a concern not over the mere lack of some unique characteristic in the print, but rather the failure of the prosecutor to establish a reasonable connection between the print and the shoe.[1]

---

1. Taking the cases cited in *McDonnell,* for example, in *Kinnan v. State,* 86 Neb. 234, 125 N.W. 594 (1910), the Court held that footprint evidence should have been excluded because

    > "[n]o testimony was produced showing or tending to show that the footprints were made by the defendant. It is not shown that they corresponded in any way with the shoes worn by him, and the only fact shown which tended to connect him with them in any manner was that they led in the direction of his home."

    *Id.,* 595. In *State v. Hall,* 286 Minn. 424, 176 N.W.2d 254 (1970), the problem was that there was no showing of when the print had been

In *State v. Palmer*, 230 N.C. 205, 52 S.E.2d 908, 913 (1949), the Court observed that:

"In the nature of things, evidence of shoeprints has no legitimate or logical tendency to identify an accused as the perpetrator of a crime unless the attendant circumstances support this triple inference: (1) That the shoeprints were found at or near the place of the crime; (2) that the shoeprints were made at the time of the crime; and (3) that the shoeprints correspond to shoes worn by the accused at the time of the crime. . . .

Moreover, the bare opinion of a witness that a particular shoeprint is the track of a specified person is without probative force on the question of identification."

---

made. The Court concluded that "absent a showing of when the print was made, evidence showing it to be defendant's, or evidence that the print has similar identifying characteristics, the print is not admissible." *Id.*, 176 N.W.2d at 259. That was also the problem in *State v. Burch*, 195 Iowa 427, 192 N.W. 287 (1923), and *State v. Sigman*, 220 Iowa 146, 261 N.W. 538 (1935). *Compare State v. Norman*, 135 Iowa 483, 113 N.W. 340 (1907); *see also Harding v. State*, 122 Neb. 766, 241 N.W. 526 (1932).

Similar circumstances appear in the other cases relied upon by appellant. In *Abrams v. Commonwealth*, 243 S.W.2d 902 (Ky.1951), for example, the Court observed that not only was the heelprint at issue (and the shoes worn by the defendant when he was arrested seven days after the offense) a "popular brand," but there was nothing to show that he was in the vicinity of the scene at the time of the offense or that he owned those shoes at that time. *See also United States v. Stabler*, 490 F.2d 345, 348 (8th Cir.1974), where the witnesses conceded that "there was no way to identify the prints as belonging to the defendant." In *Johnson v. State*, 177 Ind.App. 501, 380 N.E.2d 566, 569 (1978), the officer described a footprint found on a door as being "the same configuration" as the defendant's sole. No photograph or other depiction of the print was made, and so the Court had no physical evidence to compare. The officer took no measurements and said that the configuration that he saw "would be too difficult to describe." *Id.*, 380 N.E.2d at 569. It was in that context that the Court held that a witness can express an opinion as to similarity "provided he bases his conclusion on measurements or peculiarities of the footprints." *Id.* (emphasis omitted). Compare the later cases of *McNary v. State*, 460 N.E.2d 145 (Ind.1984), and *Hartlerode v. State*, 470 N.E.2d 716 (Ind.1984), indicating that very little in the way of "measurements or peculiarities" is required under Indiana law.

Subsequently, in *State v. Jackson*, 302 N.C. 101, 273 S.E.2d 666 (1981), the Court clarified that the tripartite test stated in *Palmer* had to do with evidentiary *sufficiency* and not with the *admissibility* of shoeprint evidence: "Evidence of shoeprints at the scene of the crime corresponding to those of the accused," it held, 273 S.E.2d at 672, "may always be admitted as tending more or less strongly to connect the accused with the crime."

To a large extent, of course, this analysis, which requires that the prints "correspond to" the defendant's shoes, merely begs the question.

We do not believe, as a general rule, that a demonstrable uniqueness in the print is or ought to be necessary as a condition to *admissibility* of footprint evidence. The extent to which the print has some special characteristic sufficient to distinguish it from the print that could be left by shoes other than those of the defendant goes more to the weight to be given to the comparison evidence than to its admissibility. Of course, as Wigmore points out (2 Wigmore, *Evidence In Trials At Common Law* § 415 (Chadbourn rev. 1979)):

> "[A] witness to identity of footmarks should be required to specify the features on which he bases his judgment of identity; and then the strength of the inference should depend on the degree of accurate detail to be ascribed to each feature and of the unique distinctiveness to be predicated of the total combination. Testimony not based on such data of appreciable significance should be given no weight."

Although the State could certainly have done a better job than in fact it did in this case, we believe that, on the record before us, the trial court did not err in admitting either the physical evidence—the photographs and the cast—or the comparison testimony. Appellant admitted being in company with Jerry Adkins at two of the places where shoeprints bearing a similar tread to those on his shoes were found. The comparison evidence was not based solely on the witness's description of what he observed but,

as to the prints found at the Allen, Blades, and Adkins homes, also on the physical evidence that the court could itself observe. Unlike the *McDonnell* -type of case, there is an indicium of reliability to the evidence here sufficient to meet the threshold for admissibility.

### (2) *Evidentiary Sufficiency*

Urging that the only evidence connecting him to the break-ins at the Blades and Mills homes was "the shoe-prints, 'the similarity of the modus operandi,' and the proximity of the residences to the Allen and Adkins residences where Appellant admitted he was present," appellant contends that this quantum was legally insufficient to sustain the convictions based on those two break-ins. We disagree.

The break-ins at the Allen and Mills homes occurred on the afternoon of January 12. The Allen home was entered between 2:00 and 4:30 p.m.; the Mills home was apparently entered between 2:00 and 3:15 p.m. The Adkins garage was broken into around noon on January 13; the Blades home was entered between 12:30 and 2:30 that afternoon. All four buildings were in the same neighborhood and all four were entered in the same manner—the breaking of a window.

■ Appellant admitted participation with Adkins in the Allen break-in and was found, two days later, to be in possession of items taken from the Allen home. Although no physical evidence of shoeprints at the Mills home was produced, Corporal White testified that prints that he observed there matched the cleat-type and herringbone prints he observed at the Allen home, prints which, in turn, were found comparable to the treads on appellant's and Adkins's shoes. Similarly, appellant and Adkins were independently identified as having been present at the Adkins home on the 13th at the time the Adkins garage was broken into. Corporal Roche, who investigated both the Adkins and Blades break-ins, testified that he observed a "cleated-type sole [print] with what you call stars or crosses pattern" and a

herringbone print at the Blades home. Both a herringbone print, matching Adkins' shoes, and a "cleat-type pattern" with "crosses or stars," matching appellant's shoes, were, as noted, found and photographed at the Allen home and at the Adkins garage. Corporal White testified that the "boot-type pattern" he observed at the Blades home "appeared to be identical with those [he] found at the Allen residence ... and similar to the boot print that was found at the Mills residence." That accumulated evidence, we think, though circumstantial, was sufficient to allow a rational trier of fact to conclude that appellant participated in the Mills and Blades break-ins.

Undisputed evidence showed that some property was taken from both the Mills and Blades homes, and, although appellant was not found directly to be in possession of any of it, a fair inference may be drawn from his participation in the break-ins that he also participated in the thefts.

JUDGMENTS AFFIRMED;

APPELLANT TO PAY THE COSTS.