# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 4, 2003 Session

## STATE OF TENNESSEE v. JAMES CURTIS WESTBROOK

**Direct Appeal from the Circuit Court for Gibson County**
**No. H-7159      Clayburn L. Peeples, Judge**

---

**No. W2003-00163-CCA-R3-CD  - Filed December 19, 2003**

---

A Gibson County jury convicted the defendant, James Curtis Westbrook, of possession of .5 grams or more of cocaine with intent to sell or deliver. The trial court sentenced him to twelve years as a Range II multiple offender to be served consecutively to a prior sentence. On appeal, the defendant contends: (1) the trial court erred in denying his motion to require the state to reveal the identity of its confidential informant; (2) the evidence was insufficient to support his conviction; (3) the trial court erred in permitting law enforcement officers to testify regarding footprint comparisons; (4) the trial court erred in permitting the state to treat a witness as a hostile witness; and (5) his sentence is improper. We remand for the empaneling of a jury to fix the fine. We otherwise affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part; Reversed in Part; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Richard W. Vaughn, Jr., Milan, Tennessee, for the appellant, James Curtis Westbrook.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Garry G. Brown, District Attorney General; and Edward L. Hardister and Elaine Gwinn, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On March 15, 2002, agents with the West Tennessee Violent Crime and Drug Task Force executed a search warrant on the premises occupied by the defendant and seized approximately 4.7 grams of cocaine. The defendant was subsequently convicted of possession of .5 grams or more of cocaine with the intent to sell or deliver, a Class B felony. *See* Tenn. Code Ann. § 39-17-417(c)(1). He received a twelve-year sentence as a Range II multiple offender.

We initially note that in addition to the appellate brief submitted by defense counsel, the defendant also submitted a *pro se* brief in which he raised issues not addressed in the brief prepared by defense counsel. However, in this court, a defendant may not be represented by counsel and simultaneously proceed *pro se*. *See* State v. Cole, 629 S.W.2d 915, 917-18 (Tenn. Crim. App. 1981). Accordingly, for purposes of this appeal, we decline to address those issues raised by the defendant in his *pro se* appellate brief.

## I. FACTS

Agent Donald Wayne Blackwell testified that on March 15, 2002, he lead a unit of several agents in executing a search warrant on the residence and surrounding premises located at 364 Jim Jackson Road in Gibson County, Tennessee. Agent Blackwell stated the residence was located in a rural area with no other houses nearby. L.J. Woodruff owned the residence and lived there with Darlene Echols, who was his daughter, and the defendant.[1]

Agent Blackwell testified he observed the defendant leave the residence and followed him to Humboldt, Tennessee, where he and Agent Danny Lewis stopped the defendant and escorted him back to the residence. Woodruff, Echols, Paul Jones, an unidentified woman, and a number of young boys were at the residence when the agents arrived.

Agent Blackwell testified that upon searching the premises, he discovered a cigarette pack containing a bag of crack cocaine underneath sheets of tin located approximately seventy yards behind the residence. Agent Blackwell stated the crack cocaine weighed 4.7 grams and was worth approximately $500. Both Agent Blackwell and Agent Lewis stated this amount was indicative of someone who intended to sell the cocaine rather than use it.

Agent Blackwell testified that because it rained the previous day, he was able to observe a series of fresh footprints that led from the back door of the residence to the pile of tin. Agent Blackwell stated the tread of the shoe prints matched the tread of the shoes which the defendant wore.

Agent Blackwell and Agent Lewis testified that a notebook which Agent Lewis seized from the defendant's bedroom appeared to be a drug ledger. Both agents stated the ledger listed initials and various prices. Agent Blackwell explained that drug dealers generally list those who owe them money by their initials rather than by their names. He further explained that the prices listed included $10, $20, and $30, which were prices in which "rocks" of crack cocaine were generally sold. Agent Blackwell testified the defendant's name did not appear on the ledger and that he was unaware of whose handwriting was in the ledger. Agent Lewis also located a receipt and a prescription pill bottle, both of which bore the defendant's name, inside the same bedroom.

---

[1] Echols was jointly charged with the defendant. She was tried along with the defendant and was acquitted of the charge.

Agent Blackwell testified agents also found a filter on Jones and arrested him for possession of drug paraphernalia. Agents further discovered a crack pipe in a hole in the wall near a stairway leading to the defendant's bedroom; cigarette packages in the living room; and a crack pipe, a bent spoon, a push rod, and lighters in the front bedroom. Agent Blackwell stated the cigarette packages resembled the package which contained the cocaine. He further stated the bent spoon had residue on it, and the push rod and the lighters are customarily used in smoking crack cocaine. Agent Blackwell testified that some time after the search was completed, he and Agent Lewis interviewed Woodruff, who admitted to using crack cocaine.

Agent Guy Steven Howell testified that upon being informed of the recovery of the cocaine, he approached the pile of tin and observed numerous footprints leading to and from the tin. He stated he identified four sets of footprints as belonging to Agent Johnny Tucker, Agent Blackwell, Agent Lewis, and the defendant. Upon examining the agents' shoes, Agent Howell was able to eliminate their footprints. Agent Howell testified he then removed the defendant's shoes, took them to the site, and determined the defendant's shoes matched footprints leading to the area where the drugs were recovered. Agent Howell explained he observed two distinctive marks on the bottom of the defendant's shoes. The center of the shoes appeared to have "a big star type sort of symbol," and the heels of the shoes made a "wedge type" impression.

L.J. Woodruff testified the defendant, Echols' boyfriend, lived with him and Echols for approximately two to three weeks prior to the execution of the search warrant. Woodruff testified that prior to the agents' arrival, he observed the defendant cutting a "stone," which appeared to be cocaine, on a plate. Woodruff stated the substance had a round shape and was as large as a quarter. He further stated that upon instructing the defendant to remove the substance from the residence, the defendant placed the material in a plastic bag and exited the residence through the back door. Woodruff testified he observed the defendant exchange cocaine in the yard on four or five prior occasions.

The defendant presented no proof at trial. The jury convicted the defendant of possession of .5 grams or more of cocaine with intent to sell or deliver as charged in the indictment. The trial court sentenced him to twelve years in confinement as a Range II multiple offender to be served consecutively to prior sentences.

## II. IDENTITY OF CRIMINAL INFORMANT

The defendant contends the trial court erred in denying his motion to require the state to reveal the identity of its confidential informant used to secure the search warrant. We disagree.

### A. Affidavit in Support of Search Warrant

The affidavit in support of the search warrant, which led to the seizure of the cocaine, provided in part that:

Within 72 hours prior to the swearing of this affidavit, a confidential source did see [the defendant] in possession of crack cocaine and did witness [the defendant] sell crack cocaine at the above listed address. This confidential source is aware of what crack cocaine looks like due to the source's previous use and association with others using crack cocaine.

Agents of the West Tennessee Violent Crime & Drug Task Force have used this confidential source in the past. This source has given information in 2 felony cases. One, leading to an arrest and conviction also a seizure of a large amount of cocaine. The second felony arrest is pending in court also with a seizure of cocaine.

## B. Hearing on Motion for Disclosure of the Confidential Informant's Identity

Prior to trial, the defendant filed a motion to compel the state to reveal the identity of the confidential informant. During the hearing on the motion, defense counsel explained he was not seeking the identity of the informant in order to attack the validity of the search warrant. Rather, defense counsel argued that because the drugs were seized from an area in which others, including the informant, may have had access, disclosure of the informant's identity was necessary to determine whether the informant was a witness or a participant in the offense.

During the hearing, the state maintained it did not intend to present the informant as a witness at trial. The state further argued the informant was not a witness to the crime nor would he be beneficial to the defense. The trial court denied the motion.

## C. Analysis

The identity of a confidential informant is generally privileged. House v. State, 44 S.W.3d 508, 512 (Tenn. 2001); State v. Vanderford, 980 S.W.2d 390, 395 (Tenn. Crim. App. 1997). This privilege, which is based upon public policy, seeks to encourage citizens to provide information of criminal activity to law enforcement officials "without unduly exposing themselves to the danger inherent in such laudable activity and to make possible their continued usefulness in future disclosures that the revelation of their identity would probably hamper and prevent." House, 44 S.W.3d at 512 (citation omitted).

However, this privilege is not absolute, and "the scope of the privilege is limited by its underlying purpose." Roviaro v. United States, 353 U.S. 53, 60, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957). No fixed rule exists regarding when the state is required to disclose the identity of a confidential informant to a defendant. *Id.* at 62. Rather, this determination is within the sound discretion of the trial court upon considering the particular facts and circumstances of the case. House, 44 S.W.3d at 512; Vanderford, 980 S.W.2d at 396.

Generally, the state is required to disclose a confidential informant's identity to a defendant when:

(a) disclosure would be relevant and helpful to the defendant in presenting his defense and is essential to a fair trial,
(b) the informant was a participant in the crime,
(c) the informant was a witness to the crime, or
(d) the informant has knowledge which is favorable to the defendant.

Vanderford, 980 S.W.2d at 397. The defendant bears the burden of establishing by a preponderance of the evidence that the identity of the informant is material to his defense in that "the informant was a witness to the crime, participated in the crime, or possesses facts favorable or relevant to the defendant." *Id.*

The defendant contends the confidential informant "might" have been a participant in the offense or an otherwise material witness. He further asserts he was unable to determine whether the informant was material unless the state disclosed the informant's identity. However, as the movant, the defendant bore the burden of proving materiality of the informant by a preponderance of the evidence. *See id.* During the hearing on the motion, the defendant admitted he did not know whether the informant was a participant or whether the informant had information which would have been helpful to the defense. Therefore, the defendant has failed to establish the materiality of the informant by a preponderance of the evidence.

We further note that the defendant was charged with possession of cocaine with intent to sell or deliver based upon the cocaine and other items which the agents seized while executing the search warrant. Nothing in the record suggests that the informant was present when the agents executed the search warrant; rather, during the pretrial hearing, the state maintained the informant was not present during the search. The state is generally not required to reveal the identity of an informant who did not participate or was not present when the offense occurred. State v. Tidmore, 604 S.W.2d 879, 882 (Tenn. Crim. App. 1980); *see also* N. Cohen, et al., **Tennessee Law of Evidence** § 5.24 (4th ed. 2000) (noting that disclosure of an informant's identity is not required if the informant only provided information which officers used in obtaining a search warrant).

Finally, the defendant asserts that the informant may have been a material witness in that he may have planted the cocaine underneath the pile of tin. However, during the pretrial hearing, the defendant failed to present any proof regarding this theory. As a panel of this court has previously noted:

If the informer's relation to the acts leading directly to or constituting the crime may be assumed from a fertile imagination of counsel, the Government in practically every case would have to prove affirmatively that the informant had not done any such likely acts. Having done that, all would be revealed and the informer privilege, deemed essential for the public interest, for all practical purposes would be no more.

Carver v. State, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citation omitted). Accordingly, we conclude the defendant is not entitled to relief on this issue.

## III. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence presented at trial is insufficient to support his conviction. We disagree.

### A. Standard of Review

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Buttrey, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). However, for this to occur, the circumstantial evidence must be consistent with guilt of the accused, inconsistent with innocence, and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900.

Great weight is given to the jury verdict in a criminal trial; it accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Therefore, while following the above guidelines, this court must remember that the jury decides the weight to be given to circumstantial evidence. "The inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions . . . for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958) (citation omitted); *see also* State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

### B. Analysis

One who knowingly possesses .5 grams or more of cocaine with the intent to sell or deliver the substance commits a Class B felony. Tenn. Code Ann. § 39-17-417(a)(4), (c)(1). "Possession" may be actual or constructive. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). To prove constructive possession, the state must establish the defendant had the power and intention at a given time to exercise dominion and control over the drugs either directly or through others. *Id*. at 903; State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997). Presence in the area of the drugs or association with those possessing drugs is not alone sufficient to establish constructive possession. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). An inference may be drawn from the amount of the drugs possessed by the accused and other relevant facts and circumstances surrounding the arrest that the drugs were possessed "with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419.

In the case at bar, various agents testified that a plastic bag containing approximately 4.7 grams of crack cocaine with an estimated value of $500 was discovered inside a cigarette package underneath a pile of tin located behind the residence in which the defendant was then residing. Agent Blackwell and Agent Lewis testified this amount of crack cocaine was indicative of one who intended to sell the drug rather than use it. Agent Howell and Agent Blackwell stated shoe prints near the area where the cocaine was seized matched the defendant's shoes. Agent Lewis and Agent Blackwell testified a notebook, which appeared to be a drug ledger, was subsequently seized from the defendant's bedroom.

Woodruff testified he observed the defendant exchange cocaine on four or five prior occasions. Woodruff stated that prior to the agents' arrival, he observed the defendant cutting a substance which appeared to be crack cocaine. When Woodruff ordered the defendant to remove the drugs from the residence, the defendant placed the substance in a plastic bag, exited the back door, and walked toward an area behind the residence. We conclude this evidence is sufficient to support the defendant's conviction for possession of .5 grams or more of cocaine with the intent to sell or deliver.

## IV. EVIDENCE OF FOOTPRINTS

The defendant maintains the trial court erred in admitting evidence that his shoe tread matched the footprints found in the area where the cocaine was seized. Specifically, the defendant asserts the testimony of Agents Howell and Blackwell did not qualify as expert testimony; rather, the agents provided inadmissible lay opinions which invaded the province of the jury.

### A. Trial Proceedings

Prior to trial, the defendant filed a motion in limine requesting the trial court to prohibit the state from introducing any evidence regarding the discovery and comparison of footprints at the crime scene. The trial court subsequently filed a written order denying the motion.

During the trial, both Agent Blackwell and Agent Howell testified regarding the footprints they observed near the area where the bag of cocaine was seized. They stated they removed the defendant's shoes from his feet, took them to the site, and compared the footprints with the tread of his shoes. The two agents stated the tread of the defendant's shoes had a distinctive design which matched the footprints. The defendant's shoes and photographs of the footprints were admitted into evidence.

### B. Analysis

The propriety, scope, manner and control of the examination of witnesses is within the sound discretion of the trial court. State v. Humphreys, 70 S.W.3d 752, 766-67 (Tenn. Crim. App. 2001). Absent an abuse of discretion, we will not interfere with such rulings. Harris, 839 S.W.2d at 72.

A witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, provided the scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue. Tenn. R. Evid. 702. The state concedes that the agents' testimony regarding the footprints failed to satisfy the requirements for the admission of expert testimony, but contends the state did not attempt to qualify the agents as experts pursuant to Tennessee Rule of Evidence 702. Therefore, we must determine whether the agents' testimony concerning the footprints was properly admitted as opinion testimony by non-expert witnesses.

Tennessee Rule of Evidence 701 limits the opinions or inferences of a non-expert witness to those which are "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Tenn. R. Evid. 701(a). Opinion testimony by non-expert witnesses is limited to opinions which do not require specialized knowledge; situations where the witness is unable to adequately communicate without testifying in the form of an opinion; and situations where the opinion will not mislead the trier of fact resulting in prejudice to the objecting party. State v. Dutton, 896 S.W.2d 114, 118 n.2 (Tenn. 1995).

Other jurisdictions have concluded a lay witness may properly testify regarding footprint comparisons and identification. *See, e.g.,* Burton v. State, 564 N.E.2d 318 (Ind. Ct. App. 1990) (noting that non-expert testimony relating to footprint comparisons is admissible provided the opinion is based upon the measurements or peculiarities of the footprints); State v. Jeter, 609 So.2d 1019, 1023 (La. App. 2d Cir. 1992) (noting that a witness need not be qualified as a footprint expert in order to testify concerning a comparison between an accused's shoes and shoe prints found at the scene of the crime); State v. Johnson, 576 A.2d 834, 851 (N.J. 1990) (holding lay opinion testimony in the area of footprint identification is admissible); State v. Rondeau, 553 P.2d 688, 698-99 (N.M. 1976) (concluding a lay witness may present opinion testimony regarding the similarity between a defendant's shoes and footprints found at the scene of the crime). As one court has observed, patterns of shoe prints are often "readily recognizable and well within the capabilities of a lay witness to observe. No detailed measurements, no subtle analysis or scientific determination is needed." Hutt v. State, 523 A.2d 643, 645-46 (Md. App. 1987) (citations omitted).

We agree with the holdings of these jurisdictions and conclude that the testimony of Agent Blackwell and Agent Howell regarding footprint identification and comparison was properly admitted. Both agents testified they observed a distinctive pattern on the tread of the defendant's shoes which matched the footprints located near the area where the cocaine was discovered. Accordingly, this issue is without merit.

## V. HOSTILE WITNESS

The defendant asserts the trial court erred in permitting the state to treat L.J. Woodruff, a witness for the state, as a hostile witness at trial. We disagree.

## A. Trial Proceedings

During trial, the state presented Woodruff, Echols' father who resided at the residence, as a witness. Woodruff testified the defendant was at the residence during the morning hours prior to the execution of the search warrant. The following colloquy then occurred:

Q. Well, what sort of things had [the defendant] been doing around the house?
A. Doing a lot of cooking.
. . .
Q. Cooking. Anything else?
A. If you'll tell me what you're talking about I might can remember. I have a hard time. I can't remember too much.
. . .
Q. Did you see anything relating to James Westbrook having anything to do with any cocaine?
A. I thought one time I seen him with some in a plate one time.
Q. You saw him with some in a plate?
A. It was something. I guess that's what it was.
. . .
Q. What was on the plate, Mr. Woodruff?
A. It was something on a plate. It looked to me like he was cutting something or another. I just walked out the door.
. . .
Q. And what did the substance look like?
A. Little stuff. I don't know what it looked like. He was just cutting stuff. I went out the door.
Q. Well, Mr. Woodruff, are you familiar with the appearance of crack cocaine?
A. Yes, I've seen a lot of it.
Q. You've seen a lot of crack cocaine?
A. Yes, sir.
Q. Well, did the stuff on the plate look like crack cocaine?
A. It looked like something like that.
. . .
Q. How big a quantity was it on the plate?
A. I didn't pay that much attention because I just went out the door. I don't like to be around nothing like that so when stuff like that goes on, I go out.

A bench conference was then held, and the state requested the trial court to allow them to declare Woodruff to be a hostile witness. The prosecutor explained that Woodruff had given a prior statement to the agents in which he stated that approximately forty-five minutes prior to the agents' arrival, he observed the defendant cutting up "a chunk of crack cocaine about the size of a half a dollar." The prosecutor further stated he and Woodruff had met on the previous day and that Woodruff was able to recall the size of the "chunk" of cocaine.

-9-

The trial court found that Woodruff was "refusing to cooperate and [was] behaving in a hostile manner to the State." The court further found that due to Woodruff's representations during the meeting, the state had a right to claim that they expected Woodruff's testimony to comport with his prior statement. The trial court permitted the state to treat Woodruff as a hostile witness.

The prosecutor then questioned Woodruff regarding his prior statement to the agents, and Woodruff admitted to making the statement. Upon further questioning, Woodruff's testimony regarding his observations prior to the execution of the search warrant was similar to the version related in the prior statement.

## B. Analysis

The defendant contends the state sought to declare Woodruff to be a hostile witness in order to introduce his prior statement. He asserts that the state should have permitted Woodruff to view the prior statement in order to refresh his recollection.

Pursuant to Tennessee Rule of Evidence 611(c), "[w]hen a party calls a witness determined by the court to be a hostile witness, interrogation may be by leading questions." This rule generally applies when the party calling the witness was surprised by the witness's testimony, which was contradictory to the witness's pretrial statements. *See* Floyd v. State, 596 S.W.2d 836, 839 (Tenn. Crim. App. 1979).

We conclude the record supports the trial court's findings. Woodruff's initial testimony was contrary to his prior statement. During a hearing outside the presence of the jury, the trial court found the state reasonably expected Woodruff to testify consistently with his prior statement. Once the trial court declared Woodruff to be a hostile witness, the state properly asked him leading questions. Woodruff then admitted he gave the prior statement and, more significantly, gave independent testimony incriminating the defendant.[2] Accordingly, this issue is without merit.

## VI. SENTENCING

The defendant contends his sentence is improper. Specifically, he asserts that the issue regarding the amount of the fine should have been submitted to the jury. The defendant further maintains that the trial court erred in ordering him to serve his sentence consecutively to his sentences for prior convictions.

---

[2]A prior inconsistent statement itself is not substantive evidence unless a hearsay exception applies. *See* State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). However, if the witness then proceeds to declare that the contents of the prior statement are in fact true, that testimony becomes substantive evidence.

## A. Sentencing Hearing

During the sentencing hearing, the state submitted the defendant's presentence report into evidence. According to the presentence report, the defendant has two prior convictions for possession of over .5 grams of cocaine with intent to sell or deliver, a misdemeanor theft conviction, a misdemeanor assault conviction, a petit larceny conviction, and numerous convictions for traffic offenses. The defendant was arrested for one of the drug offenses in October 1999 and was arrested for the theft offense and the second drug offense in March 2001. He was convicted of all three offenses in October 2001 and received an effective sentence of sixteen years, which was suspended following service of one year in confinement. Thus, he was on probation when the instant offense was committed.

The trial court sentenced the defendant to twelve years in confinement as a Range II multiple offender. The court ordered the defendant to serve his sentence consecutively to his sentences for prior convictions. The court then imposed a $3,000 fine.

## B. Standard of Review

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

## C. Consecutive Sentencing

The defendant asserts the trial court erred in ordering him to serve his twelve-year sentence for the present offense consecutively to his prior offenses. We disagree.

Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of the criteria provided in Tennessee Code Annotated section 40-35-115(b) applies. One of the criteria provides for the imposition of consecutive sentences if "[t]he defendant is sentenced for an offense committed while on probation." Tenn. Code Ann. § 40-35-115(b)(6). This provision authorizes the trial court "to order the new sentence to be served consecutively to the one for which probation was granted." State v. Moore, 942 S.W.2d 570, 572 (Tenn. Crim. App. 1996). Imposition of consecutive sentencing based upon this provision is permissive, rather than mandatory. State v. Eric Jonathan Benefield, No. E2000-02565-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 787, at **5-6 (Tenn. Crim. App. Oct. 2, 2001, at Knoxville).

According to the defendant's presentence report, on October 29, 2001, he was convicted of two counts of possession of .5 grams or more of cocaine with intent to sell or deliver, Class B felonies. *See* Tenn. Code Ann. § 39-17-417(c)(1). The defendant received an effective sixteen-year sentence, which was suspended upon serving one year in confinement. The trial court ordered the defendant to serve his twelve-year sentence for the present offense, which was committed on March 15, 2002, while the defendant was on probation, consecutively to his prior sixteen-year sentence. We conclude the trial court did not abuse its discretion in imposing consecutive sentencing.

**D. Fine**

The defendant contends the trial court erred in imposing the $3,000 fine. He maintains the amount of the fine should have been submitted to the jury. We agree.

Under the Tennessee Constitution, the right to a jury trial applies where a fine of more than $50 may be imposed. State v. Dusina, 764 S.W.2d 766, 768 (Tenn. 1989); *see* Tenn. Const. art. VI, § 14. A trial court may impose a fine greater than $50 in two circumstances: "(1) when the defendant waives the right for a jury determination of the fine, and (2) when the fine is statutorily specified and allows no judicial discretion in its imposition." State v. Martin, 940 S.W.2d 567, 570 (Tenn. 1997) (citations omitted).

During the sentencing hearing, the trial court imposed a $3,000 fine. However, we have found nothing in the technical record nor the trial transcript indicating the defendant waived his right to have the fine fixed by the jury. Furthermore, the statute at issue only provides for a minimum fine; thus, the trial court exercised some discretion in fixing the fine. *See* Tenn. Code Ann. § 39-17-428(b)(9)-(11); *see also* Martin, 940 S.W.2d at 570-71. Therefore, the trial court did not have the authority to impose the $3,000 fine. Accordingly, we remand this case to the trial court and, absent a waiver, direct a new jury be empaneled in order to fix the fine. *See* Martin, 940 S.W.2d at 570.

We further note that the $3,000 fine imposed by the trial court appears to be below the mandatory minimum fine for this offense. *See* Tenn. Code Ann. § 39-17-428(b)(11). The defendant has two prior convictions for possession of .5 grams or more of cocaine with intent to sell or deliver, the same offense for which he stands convicted in the case at bar. Because the defendant's present conviction is his third felony drug conviction involving a scheduled controlled substance, the applicable mandatory minimum fine is $5,000. *See id.*

**VII. CONCLUSION**

In summary, we conclude the trial court erred in fixing the $3,000 fine and remand for a jury to fix the appropriate fine. We otherwise affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE