DUTTON, Appellant,

v.

DUTTON, Appellee.

[Cite as *Dutton v. Dutton* (1998), 127 Ohio App.3d 348.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 C.A. 204.

Decided April 24, 1998.

*John P. Laczko,* for appellant.

*Eldon Wright,* for appellee.

Joseph E. O'Neill, Judge.

This timely appeal arises out of the trial court's denial of appellant's motions to set aside the separation agreement and for a new trial.

The facts indicate that appellant Rhoda Jo Dutton and appellee Paul M. Dutton were married on May 23, 1967 and had three children born as issue of the marriage.

On November 15, 1993, appellant filed a complaint for divorce, property division, alimony, and restraining order in Mahoning County Domestic Relations Court, at which time only the parties' youngest child had not been emancipated under Ohio law. After an answer and counterclaim were filed by appellee, both parties filed numerous motions for contempt.

Trial of this matter commenced on February 6, 1995 and continued on February 7 and 8. Trial continued on March 6, 1995 and the morning of March 7, 1995. At this point in time, prior to the noon recess, the trial judge noticed the parties conversing with each other in the courtroom and asked them whether they would go to lunch together and see whether they could work out a settlement. The court was adjourned, and the appellant and appellee went to lunch together.

Upon their return to the courthouse after lunch, the parties were met by the trial court judge, who took the parties into his chambers, at about 1:30 p.m. on March 7, 1995, to continue settlement negotiations. The trial judge was in the chambers with the parties, but neither of the parties' attorneys was present. The conference continued until about 5:00 p.m., at which time the judge indicated that a settlement had been reached between the parties. At the conclusion of the meeting with the judge, the parties met with their respective counsel to discuss the settlement terms, and court was adjourned for the evening.

The next day, March 8, 1995, the parties met at the court, where a conference relative to the terms of the proposed settlement was held in the judge's chambers with counsel and the parties. After a discussion of some of the terms of the settlement, the parties entered the courtroom, and the terms of the settlement

agreement were read into the record by the appellant's counsel. Thereafter, both parties signed the court reporter's notes.

Counsel for appellant then inquired of his client whether she had any questions concerning the agreement and whether she agreed with it. Appellant responded in the affirmative. Then, the court inquired of the appellant whether she had an opportunity to counsel with her attorney, whether she had gone over the questions that she had about the agreement, and whether she was in agreement with it and wanted to proceed to settle the case, to which she responded in the affirmative.

On April 14, 1995, appellant filed a motion to set aside the settlement of March 8, 1995. Appellee filed a brief in opposition on April 24, 1995. The trial court overruled appellant's motion on May 1, 1995 without a hearing. Appellant then, on June 1, 1995, requested written findings of fact and conclusions of law, which was denied on June 7, 1995. The judgment entry covering the terms of the settlement agreement was also journalized on June 7, 1995.

On June 19, 1995, appellant filed a motion for a new trial and a motion to have the trial court judge recuse himself. On June 20, 1995, the motion to recuse was granted. After a new judge was assigned, a hearing on the motion for a new trial was held on August 8, 1995. On August 22, 1995, the trial court overruled appellant's motion to set aside the separation agreement and to grant a new trial. This instant appeal followed on September 21, 1995.

Appellant alleges two assignments of error:

Appellant's Assignment of Error No. 1:

"The separation agreement dictated into the record herein and later journalized as the trial court's judgment entry dated June 7, 1995, is void as against public policy, collusive, obtained under duress and the result of an improper settlement conference conducted in violation of Canon 3(A)(4) of the Code of Judicial Conduct."

Appellant's Assignment of Error No. 2:

"The trial court abused its discretion to the prejudice of plaintiff-appellant by overruling her motion to set aside the separation agreement and motion for a new trial when the record on appeal evidences appellant did not knowingly and voluntarily enter into said separation agreement, but was induced, coerced and under duress when she consented to the terms therein based upon the actions of the trial court judge and the appellee."

In Assignment of Error No. 1, appellant alleges that the separation agreement was void as against public policy, collusive, obtained under duress, and obtained in violation of Canon 3(A)(4) of the Code of Judicial Conduct.

This first assignment of error is without merit.

■  Clearly, this separation agreement would have been void and against public policy if the settlement had been arrived at due to collusion and duress of appellant if the trial court violated Canon 3(A)(4) of the Code of Judicial Ethics. But note:

"A contract will not be held to be void as against public policy unless the public injury is clear; it is not sufficient that the public injury is a matter of opinion. When judges come to apply the doctrine, they must take care not to infringe on the rights of parties to make contracts which are not clearly opposed to some principle or policy of the law.   Agreements voluntarily and fairly made between competent persons are usually valid and enforceable, and the principle that agreements opposed to public policy are not enforceable should be cautiously and only in circumstances patently within the reasons on which that doctrine rests." 17 Ohio Jurisprudence 3d (1980) 529, Contracts, Section 94.

Canon 3(A)(4) of the Code of Judicial Conduct states in part:

"A judge should perform the duties of his office impartially and diligently.

"The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribe by law.   In the performance of these duties, the following standards apply:

"* * *

"(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding.

"* * *

"Nothing contained herein, however, shall preclude a judge from nonsubstantive ex parte communications on procedural matters and matters affecting prompt disposal of the business of the court."

While it certainly might have been more appropriate if the trial court had not personally involved itself with these settlement negotiations without the parties' attorneys present, he did not participate in ex parte communication concerning this matter.   In fact, at all times he met with the parties together.   "Ex parte communication" is defined as:

"Ex parte.   On one side only;  by or for one party;  done for, in behalf of, or on the application of, one party only.

"A judicial proceeding, order, injunction, etc., is said to be *ex parte* when it is taken or granted at the instance and for the benefit of one party only, and

without notice to, or contestation by, any person adversely interested." Black's Law Dictionary (6 Ed.1990) 576.

This court now must address the allegation of collusion between the trial court judge and the appellee. "Collusion" is defined as:

"Collusion. An agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law. It implies the existence of fraud of some kind, the employment of fraudulent means, or of lawful means for the accomplishment of an unlawful purpose." Black's Law Dictionary (6 Ed.1990) 264.

There is no evidence before this court nor is there any indication in the docket, or in the transcript of proceedings, or hearings of any type of collusion by the trial court judge against the appellant in this case.

The allegations of duress by the appellant are also without merit. "Duress" is defined as:

"Duress. * * * A condition where one is induced by wrongful act or threat of another to make a contract * * * under circumstances which deprive him of exercise of his free will." Black's Law Dictionary (6 Ed.1990) 504.

A bare allegation of a story by the trial court of "other cases where the court had attempted to negotiate settlement but was unable to get the parties to agree and subsequently the court's decision resulted in a substantially lesser award to the party who objected to the settlement terms" (appellant's brief, at 9, item 6) is not, in and of itself, evidence of undue influence of the appellant.

After the terms of the settlement agreement being read into the record, the court made inquiry of the appellant and asked:

"THE COURT: Do you have any questions to ask about it?

"MRS. DUTTON: I don't think so, no.

"* * *

"THE COURT: * * * Are you entering in this agreement of your own free will and mind?

"MRS. DUTTON: Yes."

Later, appellant was questioned by her attorney and the following ensued:

"Q. And did I in any way pressure you?

"A. Absolutely not.

"Q. Or force you or intimidate you in any manner to accept these terms?

"A. Absolutely not.

"* * *

"THE COURT: Did anyone force you?

"THE WITNESS: No one forced me.

"Q. And you went into this on your own free will and volition?

"A. Yes, I did."

It is further evidenced that the acceptance of this settlement by the appellant was a counseled acceptance. During the hearing before Judge Mary Cacioppo, attorney Eugene Fox testified. Attorney Fox represented the appellant during the proceedings before the trial court. Attorney Fox testified that at the end of the day during which the discussions were held between the two parties and the judge in chambers, he and the appellant retired to his office. He went on to testify that the appellant explained to him from her notes the conditions and issues involved in the potential settlement. Attorney Fox did not agree with some of the conditions and he felt that the agreement was unfair. Attorney Fox advised his client as to her choices:

"I told her she had three choices, in my opinion. One was to ask the judge to recuse himself and terminate the trial because I felt the judge's conduct would have prejudiced him from completing the case impartially at this time. So that was number one. Second was to continue with the trial with Judge Leskovansky. The third option was to accept the settlement."

After lunch, on March 8, 1995, attorney Fox met with his client in his office:

"* * * At this time she said in effect that she was going to go through with the settlement. I again reviewed her options."

On the afternoon of March 8, 1995, the parties entered the courtroom and, with the trial judge present, entered into the record conditions of the settlement agreement:

"* * * Mrs. Dutton was questioned and she acknowledged that I [attorney Fox] had reservations about the agreement. The record states that she is pleased with the terms."

As noted by the trial court in its August 22, 1995 judgment entry, the appellant is a forty-eight-year-old well-educated individual. She is a *summa cum laude* college graduate with a bachelor's degree and a few hours away from a master's degree. Appellant had ample opportunity to think over the settlement terms and also to discuss any possible duress with her attorney, who was a very experienced practitioner. Appellant did not take advantage of that and there is no indication that she was under duress at that time.

For all the reasons cited above, appellant's Assignment of Error No. 1 is without merit.

In Assignment of Error No. 2 appellant alleges that the trial court abused its discretion by overruling appellant's motion to set aside the settlement agreement and motion for a new trial, since appellant was induced, coerced and under duress by the trial court judge.

"The term 'abuse of discretion' was defined by this court in *State v. Adams* (1980), 62 Ohio St.2d 151, 157 [16 O.O.3d 169, 173, 404 N.E.2d 144, 148–149]:

■ " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Steiner v. Custer* (1940) 137 Ohio St. 448 [19 O.O. 148, 31 N.E.2d 855].' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

Having addressed the allegations of appellant that she was induced, coerced, and under duress at the time that the settlement agreement was agreed to by appellant and appellee, and, having found nothing in the record to indicate such behavior by the trial court judge, we hold that the trial court's decision was not unreasonable, arbitrary, or unconscionable and, thus, that the trial court had not abused its discretion.

■ Another issue raised by appellant in her reply brief to support her contention of coercion and undue influence is that the final settlement agreement valuations of certain assets were the same valuations that were in the appellee's pretrial statement. The fact that some of the assets' valuations ended up the same is not evidence of coercion and undue influence.

"The fact that a separation agreement does not equally divide the property of the parties does not require a finding that the agreement is unenforceable. There is no presumption that marital property should be divided equally upon divorce. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348 [20 O.O.3d 318, 421 N.E.2d 1293]." *DiPietro v. DiPietro* (1983), 10 Ohio App.3d 44, 47, 10 OBR 52, 56, 460 N.E.2d 657, 663.

Thus, even if it might seem that the settlement agreement was to the benefit of the appellee, that in and of itself is not evidence of an abuse of discretion by the trial court. In effect, while the separation agreement executed by appellant and appellee appears to be generous to appellee, the record does not support by clear and convincing evidence appellant's contention that she signed the agreement under undue influence or duress.

■ Ethically, a lawyer should exert his best efforts to ensure that decisions of his client are made only after the client has been informed of relevant consider-

ations. The lawyer should advise his client of the possible affect of each legal alternative:

"The lawyer's job is not merely to supply whatever means are needed to achieve the client's goals but also to deliberate with the client and on his behalf about these goals." *Akron Bar Assn. v. Miller* (1997), 80 Ohio St.3d 6, 9, 684 N.E.2d 288, 291.

The appellant in this matter was thoroughly advised by her attorney. She was given her options and, of her own free will and outside of any court rule, duress, or coercion, she exercised the option that she desired of her own free will.

Thus, for all of the reasons cited above, appellant's Assignment of Error No. 2 is also without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

Cox, J., concurs and concurs separately.

WAITE, J., concurs and concurs separately.

JOSEPH E. O'NEILL, J., retired, of the Seventh Appellate District, sitting by assignment.

Cox, Judge, concurring.

I reluctantly concur in the opinion in this case.

This writer has consistently held that where there is a dispute between the parties as to the meaning of the terms or conditions contained within a separation agreement, the court must hold an evidentiary hearing prior to entering judgment.

The Ohio Supreme Court upholds this position in *Rulli v. Fan Co.* (1997), 79 Ohio St.3d 374, 683 N.E.2d 337.

Here the court failed to hold the hearing, and on that basis I would have reversed.

However, the error was cured when a visiting judge was appointed and the same matters were inquired into on hearing upon a motion for a new trial.

It is bad practice for a domestic relations trial judge to hold a private settlement conference with the parties for a four-hour period excluding the parties' counsel. This is especially odorous when one of the parties is, in fact, an attorney.

This being said, the visiting trial judge did make extensive inquiry into the matter and did not find duress or collusion.

WAITE, Judge, concurring.

It can be readily discerned from the opinion and concurrences in this matter that the court is dismayed by the procedural history of this matter. It is important not only that a judge avoid direct violations of the judicial canons, but also that he or she avoid even the appearance of impropriety. This is an imperative if we are to uphold public confidence in the fairness and impartiality of the bench. Like my colleagues, I do not believe that this matter was handled in all respects in a manner befitting the dignity of the bench and bar. I must, however, agree with the other members of this panel that appellant's claims here are without merit for two reasons.

First, appellant cannot claim that the initial agreement was the product of collusion or duress. The majority opinion clearly outlines that the record is devoid of any such evidence. While appellant's ex-husband was a lawyer and she did meet with him in chambers without benefit of counsel, the record reflects that she did so willingly. In fact, appellant may not possess a law degree, but she is a highly educated woman and is apparently able to speak for herself. The record reflects that after she met for this settlement conference, she had ample opportunity to meet with and did meet with her own attorney afterward. Her attorney counseled her against certain portions of the proposed settlement. Nonetheless, the next day, after benefit of several hours of reflection on the matter and counsel from her own attorney, the record shows that appellant unhesitantly entered into the settlement agreement. In fact, she swore in open court that she was agreeing to the settlement terms of her own free will and was not under any type of coercion.

The second reason that appellant's claims are meritless is that all of these claims have been fully heard before a second, impartial finder of fact on appellant's motion for a new trial. Appellant asked that the original trial judge recuse himself from hearing her motion. Her request was granted. There are no claims that the new judge who was assigned was not fair, impartial, and unbiased. This judge held a hearing on the matter and after reviewing both the record and the demeanor of the witnesses and credibility of the evidence presented at this hearing concluded in her fairly exhaustive findings of fact and conclusions of law that appellant was not entitled to a new trial in the matter and that the original settlement agreement that was journalized by the court was valid.

In order for this court to overturn the judge's decision, we must find that she abused her discretion. The majority opinion cites *Blakemore v. Blakemore*

(1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140, to define an "abuse of discretion" as an act that is unreasonable, arbitrary, or unconscionable. Further, this court may not independently weigh the evidence contained in the motion hearing below, as we must presume that the trial court's findings of fact are correct. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 523 N.E.2d 846.

As there is no allegation of impropriety on the part of the judge who heard the motion for new trial and that judge was thorough and meticulous in her handling of the matter, if there was once a question of the accuracy and completeness of the record there can be none now.

Based on the above, I concur with the majority and affirm the judgment of the trial court.