OPINION
Defendant-appellant, Tammy Swader, appeals the disposition entered by the Warren County Court of Common Pleas, Juvenile Division, finding that she committed acts that would have constituted the crime of aggravated arson, a second degree felony, had she been an adult. We affirm the trial court's determination.
On June 18, 1999, appellant was working at Frisch's restaurant on King's Mill Road in Warren County. Appellant, who arrived at Frisch's at approximately 4:00 p.m., worked as the drive-through attendant that evening. At approximately 11:30, after the restaurant had closed, the manager, Lorraine Hakey, observed smoke coming from the ceiling. She instructed someone to call the fire department; appellant did so.
When firefighters arrived, they noted the smell of burned paper and began to inspect the restaurant for evidence of fire. The burning smell was concentrated most strongly in the dining room opposite a storage area. While perusing the building, firefighter Mark Gerbocker went into a back room that housed the employees' break room and storage shelves containing restaurant supplies. Gerbocker noticed an opened case of matches and several napkins out of place on the floor. When he opened a ceiling tile in the room, the smell of something burning became stronger.
Gerbocker saw a pile of burned ash on top of the ceiling tiles. The ash consisted of the charred remains of food service bags that had been stacked in the area above the ceiling tiles. A chair directly below the ceiling tile containing the burned ash displayed footprints, but the chair was too short for a person to have gotten into the ceiling area by standing on it. However, Michael McCarroll, a state fire investigator, noticed that a computer desk in the break room also showed a visible footprint identical to the footprint on the chair. In addition, a ceiling tile above the computer desk was visibly ajar. The distance between the ceiling tile above the computer desk and the ceiling tile above which the fire occurred was approximately four to six feet.
Fire investigators believed that the panel above the computer desk, which was proximate to the fire's origin, had been the point of access through which the perpetrator had started the fire. Since the computer table was at least six inches higher than the chair, McCarroll opined that a person stood on the computer table, lifted the ceiling tile, and started the fire by throwing the burning material across the drop ceiling. Appellant, who was five foot, one inch tall, could have reached the ceiling tile by standing on the computer table.
Once all accidental causes for the fire had been eliminated, deputy fire chief Nathan Bowman interviewed the restaurant's employees. Appellant told Bowman that, sometime after 9:00 p.m., she had gone into the break room and had stood on the chair to get supplies from a shelf. Meanwhile, Detective Don Cope searched for shoes matching the footprints on the chair and the computer desk. After checking all of the employees' tennis shoes, he found that appellant's shoes bore the closest resemblance to the footprints on the chair and on the table, and no other shoes were even close. Appellant's shoes were collected as evidence.
During the investigation, Detective Cope observed and photographed the ceiling tile above the computer table, attempting to lift his own fingerprint from the ceiling tile by using black fingerprint powder. Cope did not feel that he could obtain any fingerprints from the ceiling tile. Fire Marshall Osborne collected the ceiling tile and McCarroll took it to the laboratory, which sent it to the Bureau of Criminal Investigation and Identification ("BCI"). Jeannetta Hardin, a BCI fingerprint technician, processed the ceiling tile and conclusively identified appellant's right palm print on it.
In a second interview the next day, appellant appeared nervous and emotionally distraught. She claimed that she had not stood on the chair the evening of the fire. Although appellant claimed she had nothing to do with the fire, the state charged appellant with aggravated arson,[1] a second degree felony.[2] At appellant's adjudicatory hearing, the state introduced the ceiling tile containing appellant's palm print as state's Exhibit 26-B. The trial court admitted the ceiling tile without appellant's objection. The state also introduced as evidence state's Exhibits 7 through 23, consisting of sixteen photographs of the break room showing the computer table, the storage shelves, the ceiling tiles, and the chair.[3] The trial court admitted the photos over appellant's objection that they had not been made available to counsel in discovery.
After hearing evidence, including the testimony of Gerbocker, Bowman, McCarroll, Cope, and Hardin, the trial court found appellant delinquent for committing the crime of aggravated arson. The court, in disposition, ordered her committed to a juvenile facility for a period neither less than one year nor exceeding her twenty-first birthday. Appellant raises six assignments of error for our review.
 Assignment of Error No. 1: THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE PHOTOGRAPHS AND ADMIT THEM INTO EVIDENCE WHEN THE STATE WILLFULLY FAILED TO DISCLOSE SUCH PHOTOGRAPHS IN DISCOVERY AND THE INTRODUCTION OF THE PHOTOGRAPHS RESULTED IN PREJUDICE TO THE DEFENDANT.
Appellant claims that, at trial, the state willfully failed to allow her attorney to view sixteen photos, state's Exhibits 7 through 23, depicting the employees' break room, the computer desk, the chair, and the ceiling tiles, thus violating the discovery rules. The state responds that its discovery response showed that the photos had been made available for appellant's inspection before trial so that the trial court properly admitted them.
Appellant requested discoverable evidence under both the Ohio Rules of Criminal Procedure and the Ohio Rules of Juvenile Procedure. Although appellant couches her argument on appeal in terms of Crim.R. 16, discovery in juvenile court proceedings is governed by Juv.R. 24. Juv.R. 24 provides that each party of whom discovery is requested shall produce for inspection photographs and any physical evidence that a party intends to introduce at a hearing. Juv.R. 24(A)(5).
Under Juv.R. 24(C), the trial court can impose sanctions for failure to comply with discovery orders. The court may grant a continuance, prohibit the person from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. Juv.R. 24(C). A trial court is vested with discretion when faced with a failure to comply with discovery in a juvenile case. In re Johnson (1989),61 Ohio App.3d 544, 548. A juvenile court's decision regarding a discovery dispute is therefore reviewed by an appellate court under an abuse of discretion standard. See id.
We find no failure on the state's part to disclose these photos under Juv.R. 24. Instead, paragraph 5 of the state's discovery response, filed ten days before trial on November 5, 1999, specifically states that the state possessed photos that were available for viewing at the prosecutor's office upon request. Apparently, appellant's counsel misconstrued the state's response, assuming that two photos attached to the response constituted all of the photographs available. When the state sought to introduce the photos at trial, appellant's counsel objected to the photos' introduction but acknowledged his own error:
 MR. DAVIS: There was a response to that discovery demand which was, I think, filed in July of 1999 and at the end of that it says there are photographs which are available to be reviewed upon contacting the Warren County Prosecutor's office.
* * *
 And attached to that was probably 75 pages of miscellaneous documents of which the last document was two photocopies of two photographs, which evidently I assumed were the photographs mentioned in number five which says there are photographs which are available to be reviewed upon contacting Warren County Prosecutor's office.
The record makes clear that the state complied with Juv.R. 24 by making the photos available to appellant's counsel. Appellant's counsel simply misconstrued the state's response, resulting in his failure to view the photos before trial. Neither Juv.R. 24 nor case law requires a party to utilize discovery to discern the facts of a case. In re Roux (Aug. 24, 1998), 1998 WL 551990, at *2, Noble App. No. 238, unreported. Moreover, since the photos were available to appellant before trial, it is immaterial whether or not the state allowed appellant to inspect the photos before or during trial. The state did not violate Juv.R. 24, and the trial court did not abuse its discretion by admitting state's Exhibits 7 through 23. Appellant's first assignment of error is overruled.
 Assignment of Error No. 2: [APPELLANT] WAS DENIED HER RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL AS A RESULT OF THE PROSECUTOR'S EX PARTE COMMUNICATION WITH THE TRIAL COURT.
Appellant also claims that the trial court engaged in an ex parte
communication with the prosecutor regarding the availability of state's Exhibits 7 through 23, and that the communication resulted in the court's admission of those exhibits despite its manifested intention not to admit undisclosed material. The state responds that the record does not show whether the conversation was ex parte, and even if the conversation had been ex parte, appellant has waived the issue for review and nothing shows the conversation affected the outcome of the case.
The prohibition against ex parte proceedings is outlined in Canon 3(A)(4) of the Code of Judicial Conduct, which states, in pertinent part:
 A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding.
State v. Taylor (Nov. 2, 1998), Warren App. Nos. CA97-10-110 and CA97-10-111, at 22, unreported. The principle underlying the prohibition against ex parte communications is that the accused should have an opportunity to confront allegations made against him and to answer with his own arguments and evidence. State v. Denger (July 19, 1996), 1996 WL 402028, at *6-7, Huron App. No. H-95-059, unreported. Thus, if ex parte
communications are considered by the decision-maker without notice to the accused or opportunity for the accused to respond, then due process is violated. Id.
To prevail on a claim of prejudice due to an ex parte communication, the complaining party must first produce some evidence that an ex parte
proceeding occurred. See State v. Jenkins (1984), 15 Ohio St.3d 164,236-37.[4] An "ex parte communication" is defined as: "On one side only; by or for one party; done for, in behalf of, or on the application of, one party only." Dutton v. Dutton (1998), 127 Ohio App.3d 348,352-53, quoting Black's Law Dictionary 576 (6 Ed. 1990); State v. Cox
(1913), 87 Ohio St. 313, 333. Thus, an ex parte proceeding is one that is usually held without notice to the opposing side. See Dutton,127 Ohio App.3d at 352-53.
Here, appellant has failed to show that an ex parte communication occurred. The record reveals only the following statement by the trial court:
 THE COURT: Okay. Well, I'm going to admit the diagrams, all the numbers, the only question was the photographs, and while we were at recess the prosecutor gave me information that said the photographs did, that he did have the photographs that were available for you to view. He did not say that they were going to be exhibits.
 I guess I have to assume that if you can view the photographs that they would, or may be exhibits and I'm going to admit those.
This statement does not conclusively show that an ex parte communication occurred. While the statement clearly reveals that the trial judge and the prosecutor were present, it does not indicate whether or not appellant's counsel was also present during the conversation.
In addition, if the conversation was ex parte, it cannot be construed as prejudicial because the trial court notified appellant of the communication and gave appellant an opportunity to answer with her own arguments and evidence. Indeed, after being notified of the trial court's communication with the prosecutor during the recess, counsel went on to object to the admission of the photographs, to address the state's discovery response, and to explain his misunderstanding of the discovery response. No objection was made to the alleged ex parte communication. Since appellant was notified of the communication and undertook to respond, no prejudicial ex parte proceeding occurred. See Dutton,127 Ohio App.3d at 352-53.
Further, we note that even if an ex parte communication had occurred, we would find no error. Appellant's attorney was informed of the communication between the judge and the prosecutor before she was found delinquent, yet counsel did not object to the communication. Counsel cannot complain on appeal about supposed errors that he chose not to raise at trial. See Jenkins, 15 Ohio St.3d at 237. Appellant's second assignment of errors is overruled.
 Assignment of Error No. 3: THE TRIAL COURT ERRED IN ALLOWING EXPERT OPINION TESTIMONY OUTSIDE THE SCOPE OF THE WITNESS'S EXPERTISE.
Appellant contends that the trial court erred by allowing Detective Cope to testify that the shoe print found on top of the computer table matched the tread of her tennis shoes because Cope was not an expert qualified in that area. The state responds that Cope was an expert qualified in the area of shoe print comparison, and even if Cope was not so qualified, he properly testified to the match as a lay witness under Evid.R. 701.
Depending upon its nature, shoe print comparison testimony can be lay opinion testimony or expert testimony. State v. Poole (1996),116 Ohio App.3d 513, 528, citing State v. Jells (1990), 53 Ohio St.3d 22,28, and State v. Hairston (1977), 60 Ohio App.2d 220, 222. The determination as to whether such testimony is lay or expert must be made on a case-by-case basis. Poole, 116 Ohio App.3d at 528. Thus, we must first determine whether the trial court admitted Cope's opinion regarding the matching shoeprints as lay or expert testimony.
Appellant cites Evid.R. 702(B), claiming that the detective's opinion that the footprints matched appellant's shoes was essentially `unqualified expert testimony.' Before expert testimony may be admitted under Evid.R. 702, a threshold determination must first be made under Evid.R. 104(A) concerning the qualification of an individual to testify as an expert witness. Vinci v. Ceraolo (1992), 79 Ohio App.3d 640,645-46. The trial court here never made a threshold determination regarding Cope's qualifications to testify as an expert witness, despite appellant's objection.
Indeed, the state concedes that it laid no foundation to qualify Cope as an expert witness in the area of footprint or shoe-print comparison, but blames its omissions on appellant's stipulations to Cope's qualifications as a detective and as an evidence technician. Regardless of the reason for the state's failure to introduce an adequate foundation for Cope's expert testimony, the trial court never determined that Cope was an expert witness. Accordingly, this court must view Cope's testimony as though the court considered him a lay witness. See State v. Nabinger
(June 13, 1995), 1995 WL 360301, at *10, Franklin App. No. 94APA07-981, unreported.
Evid.R. 701 permits the opinion testimony of a lay witness if the opinion or inferences are: "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Jells, 53 Ohio St.3d at 28. A lay witness may testify regarding footprints so long as his opinion is based upon measurements or peculiarities in the prints that are readily recognizable and within the capabilities of a lay witness to observe.Id., citing Hairston, 60 Ohio App.2d at 222.
Where a lay witness expresses an opinion regarding the similarity of footprints, it means that the print pattern is sufficiently large and distinct so that no detailed measurements, subtle analysis, or scientific determination is needed. Jells, 53 Ohio St.3d at 28. In essence, the testimony is more in the nature of description by example than the expression of a conclusion. Id., citing Hairston, 60 Ohio App.2d at 223. The admissibility of lay witness testimony is reviewed under an abuse of discretion standard. City of Urbana ex rel. Newlin v. Downing (1989),43 Ohio St.3d 109, 113; State v. Brumback (1996), 109 Ohio App.3d 65,77.
Here, Cope's opinion comparing the footprints was based upon his own visual observations and the conclusions he reached based upon those observations. Cope testified that he observed and photographed the footprint that had been left on the computer desk directly below the disturbed ceiling tile. Once he had observed the footprint, he looked at each of the employees' shoes to find the shoe "closest to matching" the prints. At trial, Cope opined that the tread of appellant's shoes matched the footprints on the chair and the computer table, and no other employee's shoes were even close to being a match. Since Cope's testimony was rationally based on his perception, and he did not testify as to the result of a scientific test, the standard of reasonable scientific certainty was inapplicable. See Jells, 53 Ohio St.3d at 29.
Moreover, Cope's observations were helpful to a clear understanding of his testimony or the determination of a fact in issue, that is, whether appellant was the person who stood on the computer table, pushed up the ceiling tile, and threw burning material onto the drop ceiling. Cope's testimony meets both prongs of Evid.R. 701. We conclude that the trial court did not abuse its discretion in admitting Cope's opinion. Appellant's third assignment of error is overruled.
 Assignment of Error No. 4: THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ALLOWING THE FINGERPRINT EXPERT TO TESTIFY THAT A LATENT FINGERPRINT MATCHED KNOWN PRINTS WHEN THE LATENT PRINT WAS NOT AUTHENTICATED; THE EXPERT DID NOT PROCESS THE LATENT PRINT; THE EXPERT DID NOT HAVE PERSONAL KNOWLEDGE REGARDING THE PROCESSING OF THE LATENT PRINT[,] AND NO EVIDENCE WHATSOEVER WAS INTRODUCED REGARDING THE PROCESSING OF THE LATENT PRINT.
Appellant contends that the fingerprint evidence was not authenticated due to the state's failure to establish a proper chain of custody for state's Exhibit 26-B, the ceiling tile containing appellant's right palm print. The state responds that appellant waived any error because she failed to object to the admission of the ceiling tile testimony or to the subsequent testimony of Hardin, the BCI fingerprint examiner, on this ground at trial.
The record shows that the trial court admitted state's Exhibit 26-B,[5]
the ceiling tile taken from a spot directly above the computer table, after Hardin testified that the ceiling tile contained a palm print identified as appellant's print. Appellant offered no objection to state's Exhibit 26-B when Hardin testified about the exhibit or when the trial court admitted it. A party may not predicate error upon a ruling that admits evidence unless the party timely objects and states the specific basis for the objection. Evid.R. 103(A)(1); see, also, State v.Crawford (1989), 60 Ohio App.3d 61, 62 (failure to object to evidence at trial constitutes a waiver of any challenge to the admission of that evidence on appeal).
Because appellant objected neither to the authentication of state's Exhibit 26-B nor to Hardin's testimony, any error in the admission of the evidence is waived unless it constitutes plain error. This court will not reverse a decision of the trial court under the plain-error doctrine unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Campbell (1994), 69 Ohio St.3d 38, 41. Thus, we examine the trial court's admission of state's Exhibit 26-B for plain error that would change the outcome of appellant's trial.
Because state's Exhibit 26-B was properly authenticated, we find no error in the trial court's admission of either the exhibit or Hardin's testimony, which was based upon it. Evid.R. 901(A) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The "chain of custody" is part of the authentication and identification mandate set forth in Evid.R. 901 for the admission of evidence. State v. Brown
(1995), 107 Ohio App.3d 194, 200.
Although the state bears the burden of establishing a proper chain of custody, that duty is not absolute. State v. Moore (1973),47 Ohio App.2d 181. The state need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur.Brown, 107 Ohio App.3d at 200. However, the identity of an exhibit may be established in ways other than direct testimony; identity may also be established by inference. State v. Conley (1971), 32 Ohio App.2d 54, 62. Therefore, any breaks in the chain of custody do not go to the admissibility of evidence but to the weight afforded it. State v.Blevins (1987), 36 Ohio App.3d 147, 150.
Testimony established the ceiling tile's custody from its collection through its analysis and admission into evidence at appellant's trial. Fire marshal Osborne stated that he collected the ceiling tile that had been above the computer table. He stated that he gave the ceiling tile to McCarroll. McCarroll identified the ceiling panel that came from the spot directly above the computer table, stating that it resembled the item he got from the fire department and took to the laboratory. Hardin examined the ceiling tile while it remained at BCI. McCarroll stated that he picked up the ceiling tile after he had dropped it off at the laboratory. Thus, the state sufficiently established a chain of custody with respect to the ceiling tile.
Appellant's most serious challenge to the ceiling tile, however, is that Hardin testified the ceiling tile she received had been partially processed with black fingerprint powder, but no one had testified about processing the ceiling tile before it was sent to BCI. Contrary to appellant's assertions, the record reveals that Detective Cope testified that, during the initial fire investigation, he unsuccessfully attempted to lift his own fingerprint from the ceiling tile that had been above the computer table. The detective specifically stated that he used black fingerprint powder to process the ceiling tile. Inferences from Cope's testimony explain Hardin's statement that the ceiling tile had been partially processed with black fingerprint powder. Indeed, Cope's testimony strongly authenticates the ceiling tile, identifying the ceiling tile Hardin received and processed as the same tile removed from Frisch's during the fire investigation.
The ceiling tile Hardin analyzed was properly authenticated and identified as the tile collected from the spot above the computer table at Frisch's. We therefore find no error, let alone plain error, in the trial court's admission of the ceiling tile containing appellant's right palm print. Appellant's fourth assignment of error is overruled.
 Assignment of Error No. 5: TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE ADMISSION OF THE CEILING TILE CONTAINING LATENT FINGERPRINTS AND FAILING TO CHALLENGE THE EXPERT'S TESTIMONY REGARDING THE LATENT FINGERPRINTS WHEN NO EVIDENCE WAS INTRODUCED REGARDING THE ORIGIN AND AUTHENTICITY OF THE LATENT PRINT UTILIZED FOR THE MATCH.
Appellant next contends that her attorney was ineffective when he failed to challenge the trial court's admission of state's Exhibit 26-B, because the state had not properly established the ceiling tile's authenticity. The state responds that any objection counsel could have made at trial would have been overruled by the trial court since the ceiling tile's chain of custody had been adequately established. Thus, the state contends appellant cannot show that she received the ineffective assistance of counsel.
When reviewing appellant's claim of ineffective assistance of counsel, this court engages in the two-pronged test enumerated in Strickland v.Washington (1984), 466 U.S. 668, 690-91, 104 S.Ct. 2052, 2066, and approved by the Ohio Supreme Court in State v. Bradley (1989),42 Ohio St.3d 136, syllabus, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258. This court determines: (1) whether counsel's performance fell below an objective standard of reasonable professional competence, and (2) if so, whether there is a reasonable probability that counsel's unprofessional errors prejudiced appellant so as to deprive him of a fair trial. Strickland, 466 U.S. at 690-91; 104 S.Ct. at 2066.
To show error in counsel's actions, appellant must overcome the strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy and falls within the wide range of reasonable professional assistance. Strickland,466 U.S. at 690-91; 104 S.Ct. at 2066. Since judicial scrutiny of counsel's performance is highly deferential, reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. Id. Generally, the failure to object or move to strike an answer falls within the realm of trial tactics and does not establish ineffective assistance of counsel. State v. Hunt (1984), 20 Ohio App.3d 310.
The failure to object alone, without a showing of prejudice, will not sustain a claim of ineffective assistance of counsel. State v. Fears
(1999), 86 Ohio St.3d 329, 347. To show resulting prejudice, appellant must establish a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different. Strickland, 466 U.S. at 690-91; 104 S.Ct. at 2066. Courts may engage in the prejudice prong of the analysis alone if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. State v. Loza (1994), 71 Ohio St.3d 61, 83.
As we have already determined in overruling appellant's fourth assignment of error, the chain of custody for the ceiling tile was sufficiently established by Osborne, McCarroll, and Hardin. The ceiling tile's authenticity was further established by Cope's testimony that he used black fingerprint powder on the ceiling tile, coupled with Hardin's testimony that she received a partially processed ceiling tile. The ceiling tile would have been admitted even if appellant's attorney had objected to the tile's alleged lack of authenticity and its chain of custody.
Thus, appellant fails to show a reasonable probability that were it not for counsel's error, the result of the trial would have been different. See Fears, 86 Ohio St.3d at 347. Since appellant has failed to show the requisite prejudice resulting from counsel's failure to object, her fifth assignment of error is overruled.
 Assignment of Error No. 6: THE CUMULATIVE EFFECT OF THE ERRONEOUS ADMISSION OF EVIDENCE RESULTED IN THE DENIAL OF [APPELLANT'S] RIGHT TO A FAIR TRIAL.
Appellant claims that, even if no individual error compels reversal, the cumulative effect of the improper admission of the photos, the footprint evidence, the ceiling tile, and the fingerprint evidence denied her a fair trial. The state responds that, since none of this evidence was erroneously admitted, there can be no cumulative effect from errors.
Although a particular error might not constitute prejudicial error in and of itself, a conviction may be reversed if the cumulative effect of the errors deprives the defendant of a fair trial, despite the fact that each error individually does not constitute cause for reversal. Fears,86 Ohio St.3d at 348; State v. DeMarco (1987), 31 Ohio St.3d 191, 196-197. However, the doctrine of cumulative error is not applicable where the appellant fails to establish multiple instances of harmless error during the course of the trial. State v. Garner (1995), 74 Ohio St.3d 49, 64.
Here, we have not found multiple instances of harmless error in the trial court's admission of the evidence. Thus, there can be no cumulative effect, and the doctrine does not apply. Since the trial court properly admitted all of the evidence, appellant received a fair trial. Appellant's sixth assignment of error is overruled.
Judgment affirmed.
WALSH and VALEN, JJ., concur.
[1] R.C. 2909.02(A)(2).
[2] Appellant had also been charged with several counts of false informing in a separate case, which disposition is included within the instant trial court record. However, appellant makes no allegations in regard to the proceedings in that case.
[3] The photographs themselves are not included in the record of proceedings.
[4] Jenkins held that "some evidence" is required where an appellant alleges that an ex parte communication between judge and jury occurred.15 Ohio St.3d at 236-37. However, we find this principle equally applicable to cases where, as here, one party alleges that a private communication between the court and the opposing party occurred.
[5] There is some confusion in the record regarding the numbering of the ceiling tile containing appellant's palm print. However, the record is clear enough for this court to discern that the trial court admitted that ceiling tile as state's Exhibit 26-B, the box holding the tile as state's Exhibit 26, and a second tile containing burned debris as state's Exhibit 25.