[Cite as *Crock v. Smith*, 2023-Ohio-4037.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

EDWARD P. CROCK,

Petitioner-Appellee,

v.

EDWARD T. SMITH,

Respondent-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 NO 0501**

---

Civil Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. 220-0066

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Beau Cross*, for Petitioner-Appellee (No Brief Filed) and

*Atty. L. Scott Petroff,* for Respondent-Appellant.

Dated:  November 6, 2023

**D'APOLITO, P.J.**

**{¶1}** Appellant, Edward T. Smith, appeals from the October 14, 2022 judgment of the Noble County Court of Common Pleas sentencing him for being in indirect civil contempt of the trial court's December 22, 2020 order. On appeal, Appellant asserts the trial court abused its discretion in permitting the parties to contract against public policy. Appellant further alleges that the court's order functions as a prior restraint on speech in violation of the First Amendment. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** On or about September 15, 2020, Appellee, Edward P. Crock, petitioned the trial court for a civil stalking protection order ("CSPO") against Appellant. Appellee asserted that he and his wife, Katherine I. Crock, believed their lives were in danger due to text messages received from Appellant in which Appellant allegedly threatened to "shoot [them] if [they] came on his property" and "to make [their] live[s] a living hell." (9/15/2020 CSPO Petition, p. 2). Appellee attached approximately 40 pages of text messages as well as one Facebook Messenger message to his petition. The submitted messages do not reflect Appellee's responses or time stamps as to when these messages were sent or received. However, the court approved the temporary CSPO.

**{¶3}** Following numerous continuances, a hearing was scheduled for November 9, 2020. However, in lieu of the hearing, the parties came to a settlement agreement. Appellant and Appellee mutually agreed to refrain from contacting each other, including Appellee's wife, in any type of communication, directly or indirectly, for a period of five years. Additionally, Appellant and Appellee specified that their agreement included third parties and all social media platforms. The trial court informed both parties that once this agreement is reduced to writing and submitted to the court, the CSPO, currently in effect, would be dismissed with prejudice and this settlement agreement would take the CSPO's place. (11/9/2020 Hearing Tr., p. 6-7).

**{¶4}** On December 22, 2020, the trial court issued a judgment placing the settlement agreement in effect for five years and dismissing the CSPO. The agreement is attached to the court's judgment and includes, at length, language that if the parties

need to communicate with each other, they must do so via their attorneys. (12/22/2020 Settlement Agreement, p. 3).

**{¶5}** On April 28, 2022, Appellee filed a motion to show cause asserting Appellant violated the CSPO by "utilizing a Facebook page clearly operated by Edward Smith." (4/28/2022 Motion to Show Cause, p. 2). On the Facebook page, Appellant posted approximately eight times from April 3, 2021 to April 26, 2022 to inform those who follow/subscribe to the page, the happenings of Appellee, a well-known businessman in the area and current airport manager, along with various other Crock family members who hold positions funded by taxpayers. Appellee's counsel stated in the motion that a cease and desist letter was sent to Appellant on April 15, 2022 and that Appellant willfully continued to post information on Facebook.[1] (*Id.* at p. 4).

**{¶6}** A contempt hearing was held on August 17, 2022. A main point of contention was the definition of "contact" regarding CSPOs on social media platforms. (8/17/2022 Hearing Tr., p. 55). Appellee testified about the parties' relationship, history, and proximity of their homes. (*Id.* at p. 13, 34, 37-41). Appellee has been the Noble County Airport manager for approximately 20 years and Appellant was a volunteer at the airport for about two to three years helping to promote fly-in activities since the airport is the only one in Ohio that allows individuals to camp there. (*Id.* at p. 13). The creation of the Facebook page at issue was initially to promote the fly-in. (*Id.*)

**{¶7}** Appellee offered into evidence numerous posts from Facebook. Appellee believes Appellant was behind every post. (*Id.* at p. 12). The language and description of each post is as follows:[2]

1. <u>April 3, 2021</u>: "Ty Moore admits that he is in debt to the Crock Family and will abuse his power as commissioner to pay his debts. You definitely cannot trust someone like this in the commissioners position."

---

[1] This letter was not mentioned at the motion to show cause hearing nor contained in the record.

[2] Each post is presumably presented to Appellee through Plaintiff's Exhibits A-H and O-P, which are reflected, verbatim, through the April 28, 2022 verified motion to show cause and the June 24, 2022 supplemental motion to show cause. Discussions of each post are also contained in the August 17, 2022 trial transcript on pages 11-20.

2. <u>June 24, 2021</u>: "Now when we have events we just don't tell the party crashing commissioners or Crock['s] wife. It's public use folks come out and have some fun!"

3. <u>December 17, 2021</u>: "In case you didn't get the news the federal aviation administration granted every airport in the southern Ohio valley in excess of six figures for facility improvements and safety again this year. With the exception of Noble county because the noble county airport manager Ed Crock appointed by Commissioners Ty Moore and Brad Peoples, never did his due diligence to apply. Contact your local commissioners and tell them to stay on top of our community resources, or will have to elect some new ones!"

4. <u>March 1, 2022</u>: "The Crocks and hand picked commissioners have managed to work themselves a 4.9 million dollar deal involving county money without so much as a vote or levy. They are going to run utilities, pave roads etc. Why don't you know about this because it was on the radio but it was said that the money was going to Caldwell mobile homes, which is the paper business [Crock's] run their other financial deals through. Guess how much of that is your hard earned tax money going to help the Crock family develop their own land again? They are spending all of this money to develop a business park on the [Crock's] land that after failing to be successful and making its monthly payment to the [Crock's] is designed that the [Crocks] will end up getting it all back possibly with a debt from the county. 5 year plan."

5. <u>March 16, 2022</u>: "Brandon Crock['s] true self. Local high school football coach. Currently trying to talk himself out of criminal charges. Noble County Sherriff Department Caldwell, Ohio Caldwell High School."

a. This post included pictures of Brandon Crock.

6. <u>March 16, 2022</u>: "Kelly Riddle, Judge Noble County busted in a bar discussing future court order with Crocks kids."

<u>Case No. 22 NO 0501</u>

a. Included in this post is a picture of Crock's son and Judge Riddle.

7. <u>April 7, 2022</u>:   "If the town wasn't controlled by a private family the resources of Noble County would also be kept up to date and available for all of your kids futures. Not just the ones related to certain families. City and county officials were told during a meeting that their share of the funds needed [for] rehabilitation projects at Cambridge Municipal Airport would fall to $67,203."[3]

a. Attached is an article from the Daily Jeff Newspaper out of Cambridge, Ohio.

8. <u>April 26, 2022</u>:   "I believe the family name in this article has plenty of warehouse space down on Industrial Parkway off of Hunkadora Road that has been sitting empty for years. But hey if they told you that you would be upset about the county giving them $4.8 million of your tax revenue in a "private/public deal" to develop their own land, instead of making improvements that truly benefit you and your children. Like the commissioners stated they built this policy from the ground up themselves so you couldn't argue about it. Remember folks, you heard it here first."

a. Attached to this post is the article from the Noble County Journal-Leader publication titled, "Plans for East of I-77 Industrial Park came to Fruition."

9. <u>June 8, 2022:</u> "The contractor in charge of taking $4.8 million from the state and county to develop his own land has purchased a quarter million dollar recreational vehicle and is spending the next month at the beach with his wife. I would like to see his tax returns and his financial spending sheet for the $4.8 million awarded to him by Noble County. Improper spending suspected so. Zoey Crock."

---

[3] This sentence was an addition in trial to the language used in the June 24, 2022 supplemental motion to show cause which is stated on page 17 of the August 17, 2022 trial transcripts.

<u>Case No. 22 NO 0501</u>

a. This depicts that Zoey Crock, Appellee's granddaughter, penned this article.[4]

10. <u>June 21, 2022</u>: "Will be exposing how Ed Crock and his county commissioners with their multimillion dollar business parks have altered the FEMA flood plan in Noble County that led to a massive flood damage recently in Caldwell, Ohio. Stay tuned."

a. This has a picture of sediment pond on the business park's property.

**{¶8}** At the conclusion of the hearing, the trial court further expounded on the biggest issue, i.e., "what constituted contact," in the context of the settlement agreement. (8/17/2022 Hearing Tr., p. 56). Additionally, if Appellee met his burden of proof against Appellant then a sentencing hearing would be scheduled. The court declined to put a set date on its decision in order to further extend its research on what "contact" means in this setting. (*Id.*)

**{¶9}** On August 23, 2022, the trial court found Appellee had proven that Appellant violated the court's December 22, 2020 order which incorporated the settlement agreement created by the parties. (8/23/2022 Judgment Entry, p. 2). The court also found that the term "contact" was to include "social media such as Facebook * * *. This also includes posting on social media, indirectly or directly, about one another or their family members." (*Id.*) With respect to this interpretation of the agreement, Appellant was found to be in indirect civil contempt and a hearing was scheduled for October 13, 2022.

**{¶10}** Appellant was sentenced to 30 days in jail, suspended, and was ordered to pay $1,452 in attorney fees and court costs. (10/14/2022 Judgment Entry, p. 2); *see also* (10/13/2022 Sentencing Hearing Tr., p. 4). The trial court reminded Appellant once again that the CSPO settlement agreement is in effect until 2025 and that he must adhere to the terms mutually agreed upon. (10/13/2022 Sentencing Hearing Tr., p. 4).

**{¶11}** Appellant filed a timely appeal and raises two assignments of error.[5]

---

[4] Appellee testified he believed Appellant wanted it to appear to others that Zoey Crock, the granddaughter of Appellee, posted this statement. (8/17/2022 Trial Tr., p. 19-20).

[5] Appellee did not file a brief.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED WHEN IT ISSUED A CIVIL STALKING PROTECTION ORDER THAT FUNCTIONED AS A PRIOR RESTRAINT ON SPEECH IN VIOLATION OF THE FIRST AMENDMENT.**

**{¶12}** In his first assignment of error, Appellant argues the trial court abused its discretion in issuing the CSPO because it functions as a prior restraint on speech in violation of the First Amendment. Appellant stresses the court cannot enforce an order that forbids all future speech about the respective parties.

> We review the decision to grant a CSPO for an abuse of discretion. *T.V. v. R.S.*, 8th Dist. Cuyahoga No. 110049, 2021-Ohio-2444, ¶ 22. "An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Thompson Farms, Inc. v. Estate of Thompson*, 7th Dist. Columbiana No. 20 CO 0014, 2021-Ohio-2364, ¶ 79, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*Lee v. Ash*, 7th Dist. Harrison No. 21 HA 0009, 2022-Ohio-3288, ¶ 14.

**{¶13}** Generally, the First Amendment holds the government without power to restrict expression because of its message, ideas, subject matter, or content. *See* U.S. Const. Amend. 1. Additionally, content-neutral regulations limiting the time, place, and manner of speech are constitutional as long as they promote an important governmental interest unrelated to the suppression of free speech and do not burden substantially more speech than necessary to further those interests. *Id*. However, regulation on content-based speech is presumptively unconstitutional and is subject to strict scrutiny, which then requires it to be the least restrictive to achieve a compelling state interest. *Id*.

**{¶14}** R.C. 2903.211, "Menacing by stalking," states in part:

> (A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause

mental distress to the other person or a family or household member of the other person. * * *

(2) No person, through the use of any form of written communication or any electronic method of remotely transferring information, including, but not limited to, any computer, computer network, computer program, computer system, or telecommunication device shall post a message or use any intentionally written or verbal graphic gesture with purpose to do either of the following:

(a) Violate division (A)(1) of this section;

(b) Urge or incite another to commit a violation of division (A)(1) of this section.

R.C. 2903.211(A)(1) and (2)(a)-(b).

**{¶15}** "Contact," as defined within the CSPO, "includes, but is not limited to, telephone, fax, e-mail, voice mail, delivery service, writings, or communications by any other means in person or through another person." (9/15/2020 CSPO Petition, p. 2). This court has found that a post on Pinterest, a social media platform which has very little personal interactions with its users, was enough to find an issue of a violation of the civil protection order when the defendant posted that he would share his location with the plaintiff. *State v. Yerkey*, 7th Dist. Columbiana No. 19 CO 0044, 2020-Ohio-4822, ¶ 6.

**{¶16}** There is a strong presumption in favor of the constitutionality of state statues. *State v. Smith*, 126 Ohio App.3d 193, 210 (7th Dist.1998). The challenging party must prove, beyond a reasonable doubt, that the statute is unconstitutional. *Id*. *See also State v. Benner*, 96 Ohio App.3d 327, 330 (1st Dist.1994). A menacing-by-stalking statute is likewise not subject to a facial challenge on vagueness grounds on the basis that it chills constitutionally protected conduct as it is not within the protection of the First Amendment to guarantee free speech when one knowingly causes another to believe that one will or may cause physical harm or mental distress to another as forbidden by R.C. 2903.211. *Smith* at 210.

{¶17} Similarly, the appellant in *Smith* was not prosecuted because he exercised his First Amendment right to picket an abortion clinic, but rather because he continued to engage in a pattern of conduct that caused mental distress to the appellee as the appellee feared the appellant may actually cause him physical harm. *Id.* Similar to the case at bar, Appellant, like Mr. Smith, is not being silenced on his views or personal opinions but rather on his volitional actions and the intent behind those actions. When viewing R.C. 2903.211 in its entirety, a person of ordinary intelligence would be able to discern what type of conduct is prohibited. *Id.* With the addition of the settlement agreement created by Appellant and Appellee, specifically stating which actions and types of contacts are prohibited, the agreement narrows the scope sufficiently.

{¶18} In this case, Appellant takes issue with the trial court's enforcement of the settlement agreement which prohibits Appellant from having direct or indirect contact with Appellee or his family, specifically on social media. Appellant claims this functions as a prior restraint of his First Amendment rights. The settlement agreement was entered into by both parties, outside of the record, and instead of proceeding on the CSPO hearing. Within the terms of the settlement agreement, both parties agreed as to all forms of social media. Finding this agreement is not vague and there is no constitutional restriction on future speech, we disagree with Appellant's position.

{¶19} Appellant initially contacted Appellee via text message threating to make Appellee's life "a living hell" and using other lewd and vulgar language. After Appellee sought a temporary CSPO, until a full hearing on the matter, the communication between the parties ceased. A settlement agreement was reached in December 2020. The terms of the CSPO/settlement agreement were read on the record and all reported communication between the parties remained silent. However, around April 2021, Appellant began posting on social media about Appellee and his family, a clear violation of the CSPO. These postings continued until mid-2022 when Appellee hired an attorney to file a motion to show cause.

{¶20} Appellant argues that the CSPO includes language that limits his future speech via social media. However, this is not a restriction on his First Amendment rights but rather a governmental interest in protecting another for a defined period of time. Pursuant to R.C. 2903.211, which has not been held as constitutionally vague or broad

Case No. 22 NO 0501

in other challenges, the terms in the settlement agreement are one in which a reasonable person could adhere to and understand.  Because the agreement was entered into freely and willingly by Appellant, this court finds no error.

**{¶21}** Appellant's first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

### THE TRIAL COURT ERRED WHEN IT ALLOWED THE PARTIES TO CONTRACT AGAINST PUBLIC POLICY UNDER THE THREAT OF CONTEMPT.

**{¶22}**  In his second assignment of error, Appellant contends the trial court abused its discretion in allowing the parties to contract against public policy under the threat of contempt.  Appellant believes the resolution to the CSPO, as a whole, is against public policy.

**{¶23}**  The initial CSPO was filed in accordance with R.C. 2903.214.  Pursuant to that statute, the issuance of a CSPO requires the petitioner to establish a violation in accordance with R.C. 2903.211, "Menacing by stalking," as addressed.  *See* R.C. 2903.211(A)(1) and (2)(a)-(b).

**{¶24}**  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."  R.C. 2901.22(B).

**{¶25}**  Permitting parties to create and enter into a settlement agreement allows them to choose their own terms, no matter how narrow.  *See generally Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 38 (1972).  While a contract may be void if the purpose of performance is contrary to state statute, *Teodecki v. Litchfield Twp.*, 9th Dist. Medina No. 14CA0035-M, 2015-Ohio-2309, ¶ 22; *see also*; *Garretson v. S.D. Myers, Inc.*, 72 Ohio App.3d 785, 787 (9th Dist.1991), it is well-settled law that the freedom to contract is fundamental and courts should avoid disregarding agreements that are freely entered into between two or more parties.  *Id.*; *see generally Brown v. Gallagher*, 179 Ohio App.3d 577, 581 (4th Dist.2008).  Public policy strongly favors the enforcement of settlement

agreements which are resolutions to controversies between two or more parties. *Id.*; *see also* American Jurisprudence 2d, Compromise and Settlement, Section 4, at 938.

**{¶26}** A contract is rendered void and against public policy if the injury to the public is clear; it is not sufficient that the injury is a matter of opinion. *Dutton v. Dutton*, 127 Ohio App.3d 348, 352 (7th Dist.1998). When applying this doctrine, a judge must take care to avoid infringing on the rights of both parties making the contract which is not clearly opposed to a principle or policy of law. *Id.* When agreements are voluntarily and fairly made between competent persons, they are usually valid and enforceable unless the contract was entered into under duress or coercion. *Id.* at 354-355.

**{¶27}** Duress is defined as, "a threat of harm made to compel a person to do something against his or her will or judgment; a wrongful threat made by one person to compel a manifestation of seeming assent by another person to a transaction without real volition. Duress practically destroys a person's free agency, causing nonvolitional conduct because of the wrongful external pressure." *Black's Law Dictionary* (11th Ed.2019).

**{¶28}** Coercion is defined as, "compulsion of a free agent by physical, moral, or economic force or threat of physical force." *Id.*

**{¶29}** Appellant and Appellee entered into the settlement agreement free from duress or coercion. The agreement acted as a conclusion to a controversy properly before the trial court since Appellee had initially petitioned the court for a CSPO because he feared for his and his wife's safety and sought assistance. After Appellant was properly served and had the chance to obtain counsel, Appellant and Appellee participated in discussions which ended in a mutually agreed upon settlement. This settlement agreement was read onto the record and became attached to the court's judgment entry on December 22, 2020.

**{¶30}** Similar to the settlement agreement in *Dutton*, the agreement here is free of duress or coercion, thereby making it a valid agreement between the parties. *Dutton, supra,* at 355. Since courts readily accept and even encourage settlement agreements, as contained in *Teodecki* and based on the facts presented in this case, the trial court did not abuse its discretion in permitting the parties to create and enter into the settlement agreement at issue.

**{¶31}** Appellant's second assignment of error is without merit.

## CONCLUSION

{¶32} For the foregoing reasons, Appellant's assignments of error are not well-taken. The October 14, 2022 judgment of the Noble County Court of Common Pleas sentencing Appellant for being in contempt of the settlement agreement which established the terms of the CSPO is affirmed.

Waite, J., concurs.

Robb, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Noble County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**